Chester WITHERS, Jr., Plaintiff,

v.

**UNITED STATES POSTAL SERVICE,
et al., Defendants.**

No. 73CV657–W–2.

United States District Court,
W. D. Missouri, W. D.

May 13 1976.

Basil North, Jr., North, Colbert & Fields, Kansas City, Mo., for plaintiff.

Bert C. Hurn, U. S. Atty., Kenneth Josephson, Asst. U. S. Atty., Kansas City, Mo., for defendants.

## MEMORANDUM AND ORDER ON PENDING MOTIONS

COLLINSON, District Judge.

This is an action by which plaintiff seeks judicial review of his discharge from employment with defendant, the United States Postal Service. Also joined as a defendant is Theodoric Bland, Postmaster for Kansas City, Missouri. This cause pends on cross-motions for summary judgment and defendants' motion to dismiss. The entire record of the administrative proceedings [Rec.] concerning plaintiff's discharge has been submitted to the Court and has been supplemented by various documents filed by the parties. Since our review is limited to the record provided by the parties, *see e. g., Polcover v. Secretary of the Treasury,* 155 U.S.App.D.C. 338, 477 F.2d 1223, *cert. denied* 414 U.S. 1001, 94 S.Ct. 356, 38 L.Ed.2d 237 (1973), the case is properly before us for summary disposition. For the reasons stated herein, defendants' motion for summary judgment will be granted and the Clerk will be directed to enter judgment on behalf of the defendants and against the plaintiff.

Defendants move to dismiss the complaint on the grounds of lack of subject matter jurisdiction, laches, and failure to state a claim. The latter two grounds are meritless.[1] Although the Court concludes that jurisdiction is proper, this issue deserves discussion.

---

1. The Government contends that plaintiff's action should be barred by the equitable doctrine of laches since the instant complaint was not filed until approximately two years after plaintiff's discharge and sixteen months following the final appellate decision of the Postal Service. The Government has not asserted lack of knowledge of plaintiff's cause of action nor any prejudice or injury resulting from the delay. Further, plaintiff explains in an affidavit attached to his motion for summary judgment that he was "without funds," "immediately attempted to gain counsel" and "finally persuaded [the attorney who originally appeared on plaintiff's behalf] to assist me." The circumstances of this case do not present an appropriate basis for invocation of the equitable doctrine and the Government's argument will be rejected. The Government also argues that plaintiff fails to state a claim upon which relief may be granted. These contentions are in part based upon the question of subject matter jurisdiction which is treated in the body of this opinion. Further, although plaintiff's original counsel understandably encountered some confusion in attempting to plead a cause of action for judicial review under the provisions of 39 U.S.C. § 1208(b) (1970) which provides for litigation concerning violations of collective bargaining agreements, the parties have both argued the case within the context of an action for judicial review. Defendants can scarcely complain of surprise or want of an opportunity to plead to this construction of plaintiff's cause based upon their suggestions in support of the Postal Service's motion for summary judgment. Further, contrary to defendants' assertion, the decision of the Board of Appeals and Review is final, "appeal for a court ruling excepted." Labor Agreement, Article X, Section H.2.b.(2)(a).

Plaintiff alleges jurisdiction under numerous statutes including 28 U.S.C. § 1339; 39 U.S.C. § 409; 39 U.S.C. § 1208(b); 5 U.S.C. §§ 551–54 and 701–06 (1970). Defendants attack jurisdiction under Titles 28 or 39 on various grounds. The invocation of the provisions of Title 5 was added recently by amendment to the complaint.

The restructuring of the Postal Service accomplished by passage of the Postal Reorganization Act, 39 U.S.C. §§ 101 *et seq.* (1970), has presented a number of jurisdictional questions concerning the proper treatment of discharge cases. *See, e. g., Shaw v. Postal Service,* Civil Action No. 20478–2 (W.D.Mo. 1976), and *Thornburgh v. Postal Service,* Civil Action No. 20656–2 (W.D.Mo. 1976). In Section 1208(b) of the Act, a new cause of action is created based upon the framework of Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) (1970). Under Section 1208(b), an aggrieved employee may bring a federal action against the Postal Service for alleged violations of collective bargaining agreements entered into by the Postal Service and a labor union. As in Section 301 cases, this implies that an action may be brought for the alleged wrongful discharge of the employee.

However, the statutory provisions authorizing judicial review of an adverse action of a federal agency, Chapters 5 and 7 of Title 5, are expressly made inapplicable to Postal Service discharges. 39 U.S.C. § 410(a) (1970). And the discharge of its employees is committed expressly to the discretion of the Postal Service subject to applicable laws, regulations and collective bargaining agreements. 39 U.S.C. § 1001(e)(2) (1970). This has not deterred some courts from engaging in at least limited judicial review of Postal Service adverse actions. *See, e. g., Alsbury v. United States Postal Service,* 392 F.Supp. 71 (C.D.Calif. 1975); and *Marsden v. United States Postal Service,* 390 F.Supp. 329 (D. Minn. 1974).

In fact, the Court has found only one decision in which this jurisdictional issue was discussed, *Burns v. United States Postal Service,* 380 F.Supp. 623 (S.D.N.Y.

1974). Based upon the strong presumption in favor of judicial review of administrative actions, see *Barlow v. Collins,* 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970), and *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); the absence of an expression of Congressional intent to the contrary, see Legislative History of the Postal Reorganization Act, 1970 U.S. Cong. & Adm. News, pp. 3649–3723; the existence of a general jurisdictional statute providing for jurisdiction in the federal courts of suits by or against the Postal Service, 39 U.S.C. § 409(a) (1970); provision in the Act for the application of Chapter 75 of Title 5 which pertains to the rights of a federal employee during adverse employment proceedings; and provision for judicial review in the rules which the parties deem applicable to this proceeding, see Article X, Adverse Action and Appeal Procedure, Section H.2.b.(2)(a), National Agreement between the United States Post Office Department and the National Post Office Mail Handlers, Watchmen, Messenger and Group Leaders [the Labor Agreement]; the Court believes that jurisdiction is proper under 39 U.S.C. § 409(a) (1970) for our " 'nonstatutory' judicial review" of plaintiff's discharge. *See Burns, supra,* at 626–27, *citing* Byse & Fiocca, Section 1361 of the Mandamus and Venue Act of 1962 and "Nonstatutory" Review of Federal Administrative Action, 81 Harv.L.Rev. 308, 321, 323 (1967).

The standard for our review is well stated in *Vigil v. Post Office Department of the United States,* 406 F.2d 921 (10th Cir. 1969). Since the action complained of is committed to the discretion of the agency, the court may only inquire whether substantial compliance was made with the applicable procedures, and whether the actions of the Postal Service were arbitrary or capricious or not supported by substantial evidence. *Vigil, supra,* at 922–24.

Our first inquiry concerns the degree of compliance by the Postal Service with applicable procedures regarding plaintiff's discharge. The parties used the procedures outlined in the Labor Agreement, Article X,

as authorized by 39 U.S.C. § 1001(e) (1970).[2] *See also* 39 U.S.C. § 1005 (1970). Further, the Act makes applicable the provisions of Chapter 75 of Title 5, 5 U.S.C. §§ 7501 *et seq.* (1970), where those provisions are not inconsistent with a labor agreement. 39 U.S.C. § 1005(a)(1)(A) (1970). The adverse action procedures set forth in the Labor Agreement, Article X, substantially conform to the provisions of 5 U.S.C. § 7501 (1970) and regulations promulgated by the Civil Service Commission, 5 C.F.R. §§ 752.-101 *et seq.* (1971) for use in federal termination proceedings.

The Postal Service sent a "Notice of Proposed Adverse Action" to the plaintiff on October 14, 1971. The notice was in writing and was signed by a responsible official, the Kansas City Postmaster. The Postmaster noted therein that the proposed discharge was for such cause as would promote the efficiency of the service and that the action would be effected not sooner than 35 calendar days from receipt of the letter by the plaintiff. Plaintiff was further informed of the specific reasons for the proposed action; the type of action proposed; his right to answer the charges in writing or in person or both within 10 days of receipt of the letter; that his answer should be directed to the Postmaster; that additional time for submission of his answer was available upon a showing of necessity; and that he would subsequently receive a letter of decision which, if adverse, would include a list of the reasons relied upon in making the decision. Rec. at 40–41.

By letter dated October 22, 1971, plaintiff requested additional time within which to reply, Rec. at 39, and on October 27, 1971,

his request was granted. Rec. at 35. On November 9, 1971, he answered the charges raised in the Notice and informed the Postmaster that he would be represented in future proceedings by the president of his Union local. Rec. at 35.

By Notice of Decision dated November 22, 1971, the Postmaster informed the plaintiff that the charge had been sustained; that his previous record of unexcused absences had been considered; and that the adverse action to be taken was discharge from employment with the Postal Service effective on December 15, 1971. The Notice was in writing, confirmed the penalty identified in the letter of proposed action; did not increase the penalty and clearly identified the adverse action and effective date. Plaintiff was also notified of his right to appeal through Civil Service Commission procedures or those of the Postal Service after receipt of the Notice but not later than fifteen days after the effective date of the adverse action. He was further informed that if he chose to invoke Postal Service procedures within ten days of receipt of the Notice, the adverse action would not be imposed pending decision at the first appellate level. Rec. at 33–34.

The Notice of Decision was sent by certified mail and the parties agree that plaintiff received the Notice on December 3, 1971.

By letter addressed to the Regional Postmaster General, Chicago, Illinois, and postmarked December 13, 1971, plaintiff notified the Postal Service of his intention to appeal the decision of the Kansas City Postmaster. A copy of plaintiff's letter was received by the Kansas City Postmaster on

---

2. Defendants also argue somewhat imprecisely in their motion to dismiss for want of subject matter jurisdiction that since plaintiff claims rights under a collective bargaining agreement which was negotiated and signed prior to the effective date of the Act, the provisions of 39 U.S.C. § 1208(b) cannot confer jurisdiction in this Court since the statute should not be applied retroactively. Whatever the merits of the argument which defendants seek to raise hereby, the Court notes that plaintiff's cause of action arose long after the effective date of Sections 1208 and 409 (July 1, 1971, *see* 1970 U.S. Code Cong. & Adm. News p. 926) and the Act includes a savings provision for labor agreements in effect on the date of enactment. 39 U.S.C. § 1203(b) (1970). In any event, the parties have not provided the Court with the relevant dates concerning the labor agreements in question and it is obvious that the provisions of the 1968–1971 Agreement were invoked by the parties in plaintiff's case. Accordingly, the Court will consider the provisions of that Agreement, a copy of which was submitted by defendants, as applicable in this litigation.

December 14, 1971. Rec. at 32. Plaintiff therein requested that an investigation, rather than a hearing, be initiated.

Postmaster Bland interpreted the relevant provisions of Article X of the Labor Agreement to require that he *receive* a copy of plaintiff's letter of appeal within ten days in order to prevent immediate termination.[3] Since the letter was received by the Postmaster eleven days after receipt by the plaintiff of the Notice of Decision, plaintiff was terminated on December 15, 1971.

On or about December 20, 1971, the Kansas City Postal Offices received a letter from the Director, Employee Relations Division, Central Division. The Director requested therein that the Kansas City Postmaster

> [f]orward to this office, via certified mail, the adverse action file of [the plaintiff]. This is a first level appeal. The letter of appeal is postmarked 12–13–71. If within the 10 day appeal limit, DO NOT IMPOSE PENALTY. . . .

[Emphasis in original.] Rec. at 31. By letter dated December 27, 1971, Postmaster Bland informed the Regional Employee Relations Director that "Mr. Wither's appeal was not timely" and that the plaintiff had been terminated on December 15, 1971. Rec. at 30.

Pursuant to plaintiff's request, a full investigation concerning the merits of his appeal and its timeliness was conducted by a Hearing Officer/Investigator. Plaintiff was notified in writing of the day scheduled for the investigator's visit to Kansas City and of plaintiff's right to present facts and/or evidence relevant to the adverse action charges. The investigation was held on March 15, 1972. On May 1, 1972, the Hearing Officer/Investigator published his Summary of the investigation and his Findings of Fact. He found that plaintiff's appeal was timely based on the fact that it

was *postmarked* within ten days of receipt of the Notice of Decision and that the letter of December 16, 1971, from the Regional Employment Relations Director had so indicated. Thus, the Hearing Officer concluded that the charges against plaintiff were not supported, based upon the denial of his appellate rights.

The Postmaster filed timely objections to the Investigation Summary with the Regional Postmaster General. By letter from that office dated May 8, 1972, plaintiff was informed that his appeal had been denied on the regional level. This decision was timely rendered, in writing, dated, and advised plaintiff of the reasons for the action taken and of his further appellate rights. The letter is silent as to the alleged untimeliness of the original letter of appeal. Rec. at 6–7.

Plaintiff next appealed to the Board of Appeals and Review (BAR). The BAR affirmed plaintiff's discharge by opinion and accompanying letter dated August 21, 1972. Based upon its review of the entire appellate file, the BAR determined that plaintiff was afforded his rights under the existing procedures and that "Management, in taking adverse action against [the plaintiff] and in processing his first level appeal, complied with all essential requirements. . . ." The charges against the plaintiff were sustained, "notwithstanding the hearing officer's findings. . . ." Rec. at 3–5. The BAR also noted in the accompanying letter that it had considered the representations made on plaintiff's behalf at that appellate level by the National Director of plaintiff's Union.

The decision of the BAR is final and is considered the decision of the Postmaster General. Labor Agreement, Article X, Section H., 2.(b)(2)(a).

The only procedural issue raised by plaintiff in his motion for summary judgment concerns his dismissal which was effected

---

3. Article X, Section E.2 specifically provides: The employee must be further informed that if he *submits* his appeal through the Department's procedures within ten calendar days of receipt of the adverse decision the adverse action will not be imposed until a decision has been rendered on his appeal by the first appellate level.
[Emphasis added.]

before the first-level appellate determination based upon the finding that his appeal was untimely. Plaintiff's interpretation of the word "submits" is supported directly by the finding of the Hearing Officer and to a certain extent by the December 16, 1971, letter from the Regional Director, Employee Relations Division. Plaintiff also contends in his complaint that his immediate termination impaired his appellate rights by virtue of his loss of income from December 15, 1971, the termination date, to May 8, 1972, when the first-level appellate decision was rendered. Plaintiff's counsel stated that plaintiff would have used a portion of his income to retain legal counsel and that absent legal counsel, the invocation of the appellate procedures became "mere ceremony."

■ The Court agrees that "submits" is ambiguous. However, were we to accept plaintiff's interpretation, we would step beyond the bounds of our limited scope of review. The agency's interpretation of its own rules is to be accorded some weight. Plaintiff has failed to cite any instance in which the agency interpreted the rule in a different manner nor has the plaintiff offered any explanation for the delay in the preparation and service of his letter of appeal. Further, the defendants have submitted the affidavit of Mr. Carl Carlson, the Regional Assistant Postmaster General for Employee and Labor Relations, Central Region, United States Postal Service. Mr. Carlson avers therein that ". . . [a]t all times material, management of the Kansas City, Missouri Post Office interpreted the time limit requirements set forth in Article X, Section E, paragraph 2 of the 1968–1970 [*sic*] National Agreement to mean that an appeal had to be received within ten calendar days of receipt of an adverse decision." The use of the word "submits" in the Notice of Decision follows precisely the language set forth in the Labor Agreement at Article X, Section E.2. And despite the finding of untimeliness at the local level, the merits of plaintiff's case were considered at both appellate levels.[4]

Plaintiff apparently was represented by his Union during the entire appellate process. His counsel's argument that the assistance of an attorney would have materially enhanced plaintiff's chances on appeal is speculative and, in light of the Union's assistance, without merit. Plaintiff has not alleged prejudice in any other respect.

Accordingly, the Court finds and concludes that the Postal Service substantially complied with the applicable procedural requisites. Alternatively, we hold that if the determination of plaintiff's initial appeal as untimely was error, it was not so prejudicial as to warrant this Court's reversal of the adverse action. *See Braniff v. CAB,* 126 U.S.App. D.C. 399, 379 F.2d 453, 465–66 (1967); *see also Alsbury, supra,* 392 F.Supp. at 76, and cases cited therein.

Our second inquiry concerns whether the discharge was arbitrary or capricious or not supported by substantial evidence. Plaintiff does not contest the merits of the adverse action in his motion for summary judgment. However, in the interest of justice, the Court has carefully reviewed the entire administrative record in this regard. The standard to be applied is both statutory and a part of the Labor Agreement; plaintiff's termination must be based upon "such cause as will promote the efficiency of the service." 5 U.S.C. § 7501(a) (1970) and Labor Agreement, Article X, Section C.

Plaintiff was charged with being absent from his duties without permission during September 18–28, 1971, and on October 2, 1971. He does not contend before this Court that these absences were in any way officially authorized or otherwise justified.[5]

---

**4.** Moreover, the interpretation accorded "submits" by the Postal Service is practical in application. In the Court's experience, delivery of a letter to the United States Mails does not inevitably result in receipt by the addressee. Assuming the general purpose of the appellate procedures is to promote the *prompt* resolution of employment disputes (to the benefit of both employee and employer), interpretation of "submits" to mean the mere act of mailing the letter of appeal would often result in delay and confusion.

**5.** In his reply to the Notice of Proposed Action, plaintiff stated that "[o]n the following dates as

Absent such allegations and in light of plaintiff's previous work record (which was also considered by the Postal Service in ordering his discharge), we cannot say that the termination was arbitrary or capricious or that the decision to terminate the plaintiff based upon "such cause as will promote the efficiency of the service" was not supported by substantial evidence.

The Court hereby finds and concludes that plaintiff was accorded his full procedural rights during the termination proceedings. His discharge was not arbitrary or capricious or not supported by substantial evidence. Therefore, the Clerk will be directed to enter judgment in behalf of the defendants and against the plaintiff.

For the reasons stated herein, it is

ORDERED that defendants' motion to dismiss be, and hereby is, denied; and it is

ORDERED that plaintiff's motion for summary judgment be, and hereby is, denied; and it is

ORDERED that defendants' motion for summary judgment be, and hereby is, granted; and it is

ORDERED that the Clerk enter judgment in favor of the defendants and against the plaintiff, costs to be taxed equally between the parties.

outlined in your letter of charge, my leave was authorized. It was after my return to duty that the leave was misconscrued [sic] to be unauthorized." Rec. at 38. This statement was clarified during plaintiff's interview with the Hearing Officer/Investigator. The interview was summarized by the postal official in this manner: "[a]ppellant further contended that all his requests for sick leave for the dates cited in the letter of charges were supported by bona fide medical statements, as required by letter of Medical Certification (S/L restriction) issued to him on March 17, 1970. The requests he felt,

should have been granted because he had met Management's requirements. He said that was what he meant by the reference that the leave was first authorized then 'misconstrued as been unauthorized'" [sic]. Although plaintiff's counsel contends that the Postal Service has admitted that plaintiff's absences were supported by written medical excuses, the import of this "fact" is not explained nor is further allusion made to the subject. See Suggestions in Opposition to Defendant's [sic] Motion filed on April 8, 1976, at p. 1.