**M. Marion OATES, Plaintiff,**

v.

**The UNITED STATES POSTAL SERVICE, NEW YORK and the United States Civil Service Commission, Defendants.**

No. 76 Civ. 5210.

United States District Court,
S. D. New York.

Jan. 11, 1978.

Eugene Prosnitz, New York City, for plaintiff.

Robert B. Fiske, Jr., U. S. Atty., S.D. N.Y., New York City, for defendants by Mary C. Daly, Asst. U. S. Atty., New York City, of counsel.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

Plaintiff, a relief nurse employed by defendant United States Postal Service, has brought this action for review of the Postal Service's decision of October 21, 1976 discharging her for improper performance of her duties. The complaint also invokes the Civil Rights Act of 1964 and alleges that her discharge was "for reasons of discrimination." Since there is presently pending a previously filed action in which plaintiff seeks review of an April 22, 1975 Civil Service Commission determination that plaintiff's dismissal was not effected for reasons of discrimination, the parties have agreed that the instant action shall be limited solely to one challenging the October 21, 1976 action of the Postal Service.

Both sides have moved for summary judgment based on the record of the hearing before the Postal Service. In addition, plaintiff claims that the hearing was conducted in violation of due process and, in any event, the agency was collaterally estopped from holding the hearing; defendant Civil Service Commission contests the legal sufficiency of plaintiff's claim against it. With respect to this latter contention, in view of the construction placed on the complaint by the parties, it does not appear that the Civil Service Commission is the subject of any instant claim. That agency played no role in the administrative proceedings here in issue and plaintiff has not disputed the absence of a claim against that defendant. Indeed, plaintiff has not even addressed the issue. Consequently, the complaint is dismissed as to defendant Civil Service Commission.

Plaintiff's discharge arose out of actions taken by her in the early morning hours of May 11, 1973 while on a tour of duty at the medical unit of the General Post Office, New York, New York. Of the six postal employees who consulted plaintiff on that tour, five were referred by plaintiff to the emergency room at French Hospital. These referrals were for medical complaints of 1) a painful arm and shoulder, 2) a wrist injury, 3) generalized body itching, 4) a twisted ankle and 5) nausea and dizziness. The employees with the latter three complaints were sent to the hospital by ambulance.

On July 23, 1973 plaintiff was notified by the Postmaster, New York, New York that the Postal Service proposed to remove her from employment on August 30, 1973. This notification referred to disciplinary suspensions of plaintiff from May 1 through May 5, 1973 and May 15 through May 19, 1973 for insubordination and unauthorized absences during the prior months and to earlier disciplinary counselling of plaintiff. It further charged plaintiff with improper performance of her duties for "unnecessarily" referring five cases to the French Hospital on May 11, 1973.

Plaintiff responded in writing to this notification and her reply was analyzed by the Area Medical Director who recommended her removal. On August 23, 1973 plaintiff was advised by the Postmaster that she would be discharged the following week. This decision was appealed to the Regional Postmaster General, Northeast Region, pursuant to provisions of Part 444 of the Postal

Service Manual, which provides for a grievance procedure for Postal Service employees not covered by a collective bargaining agreement.

The hearing on the appeal, however, was not held until February 25 and 26, 1976. This delay was partly due to the agency's suspension of the proceedings pending a determination by the Equal Employment Opportunity Commission of charges that plaintiff was discriminated against in the conditions of her employment and then terminated from her employ because of her religion and national origin. These charges of discrimination were filed by plaintiff on April 27th and September 12, 1973 and subsequently consolidated for a hearing. Resolution of these complaints occurred in April 1975.

After the hearing on the instant charges, the Hearing Officer found by a preponderance of the evidence that neither the hospital referrals nor ambulance service was medically necessary, that plaintiff had engaged in poor nursing judgment and that disciplinary action was warranted. Based on the record of this hearing and the Hearing Officer's report, the Regional Director, Employee and Labor Relations, notified plaintiff on June 23, 1976 of his agreement. He determined that in light of plaintiff's prior disciplinary record the referrals were retaliatory in nature and that her discharge was justified. On October 21, 1976 the Assistant Postmaster General notified plaintiff that her appeal from the regional decision was unsuccessful. The following month plaintiff instituted this action.

■ Although the statutory provisions of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* authorizing judicial review of adverse agency action are made expressly inapplicable to Postal Service discharges by 39 U.S.C. § 410(a), and Congress has seen fit to commit the discharge of Postal Service employees to the discretion of that agency subject to applicable laws, regulations and collective bargaining agreements, 39 U.S.C. § 1001(e)(2), some courts have nonetheless engaged in limited review of Postal Service adverse actions essentially in

light of the strong presumption in favor of judicial review of administrative actions and the existence of a general jurisdictional statute providing for jurisdiction in the federal courts of suits by or against the Postal Service, 39 U.S.C. § 409(a). *See Withers v. United States Postal Service*, 417 F.Supp. 1 (W.D.Mo.1976); *Burns v. United States Postal Service*, 380 F.Supp. 623 (S.D.N.Y. 1974). The standard of review, however, is exceedingly narrow. Since plaintiff's discharge was an act committed to the discretion of the Postal Service, judicial review is limited "to the extent required to insure 'substantial compliance with pertinent statutory procedures provided by Congress' . . . and the guard against arbitrary or capricious action . . ." *McTiernan v. Gronouski*, 337 F.2d 31, 34 (2d Cir. 1964). *See also Vigil v. Post Office Department of the United States*, 406 F.2d 921, 922–24 (10th Cir. 1969).

Plaintiff's claims of procedural irregularity amounting to a denial of due process focus on the delay between her discharge and the hearing with regard thereto and on the possibility of bias on the part of the Hearing Officer. Although plaintiff was discharged in August 1973 and her appeal from the determination to remove her was dated August 24, 1973, the hearing on her appeal was not held until February 1976, some two and one-half years later. Initially, the Postal Service advised plaintiff that the hearing would not be scheduled immediately because of the investigation of the Equal Employment Opportunity complaints of discrimination filed by plaintiff. When on January 16, 1975 plaintiff was notified that a hearing was scheduled for February 5, 1975, her attorney obtained an adjournment to March 13, 1975. In response to counsel's further rescheduling request, the Postal Service advised counsel that the hearing would be adjourned pending resolution of plaintiff's appeal from the Postal Service's finding of no discrimination. The hearing was subsequently rescheduled for July 9, 1975; however, plaintiff requested a further adjournment pending resolution of "another phase of the Equal Employment

Opportunity proceedings." This request was denied, but it was followed by her counsel's request for a sixty-day adjournment which was granted. The hearing was finally set down for a date in February, 1976.

Plaintiff contends that this delay violated Postal Service regulations which provide that "[t]he hearing shall be conducted, normally, within fifteen days from the date the Step I official receives the appeal." Postal Service Manual, Part 444.241(a)(3). However, procedures to be followed by the Postal Service also provide for the suspension of a decision on an appeal pending consideration of a complaint of discrimination. Postal Service Regional Instructions ¶ XID; Federal Personnel Manual ch. 713 ¶ B–10a(3) at 713–B–12. Plaintiff cites the following exception contained in ¶ B–10a(3):

. . . a decision on the grievance or appeal may be made only after the head of the agency, or his designee, has made his decision on the complaint of discrimination under this appendix, *except when the decision on the grievance or appeal is in favor of the employee as a result of consideration of issues other than the issue of discrimination.* (emphasis supplied)

She argues that this provision clearly allows the holding of a hearing prior to, or simultaneously with, that on the discrimination claims. While this provision can be viewed as pertaining only to the rendering of a decision and not to the holding of a hearing, thus not prohibiting the holding of a hearing on an appeal pending the decision on a discrimination complaint, since the decision on plaintiff's appeal was not one in her favor, she would not benefit from the terms of that provision. In any event, plaintiff has failed to show that she was prejudiced in any substantial respect from the delay.

What plaintiff does claim with respect to prejudice is that she was deprived of a fair hearing since the employees whom she referred to the French Hospital did not appear as witnesses. The record is silent with respect to the rationale for these employees' absences; it is clear that their presence as witnesses was requested and that four of the five submitted statements on the events of May 11, 1973. Despite their absence as witnesses, the record of the hearing indicates that both plaintiff and her counsel conceded that plaintiff had been afforded a fair and full opportunity to present her case.

■ As for the delay *per se,* neither plaintiff nor her counsel ever disputed the adjournments. Indeed, had plaintiff been successful in her discrimination claim, the necessity for a hearing on her appeal would have been obviated. Moreover, once the Postal Service made a finding of no discrimination and a hearing was scheduled, both plaintiff and her attorney actively sought all the successive postponements. On the record before me, it cannot be said that the delay engendered a denial of plaintiff's right to due process of law.

■ Plaintiff's claim of bias on the part of the Hearing Officer stems from the Hearing Officer's position as a Postal Service employee. She argues that, as a result, he had an interest in saving the Postal Service from the substantial amount of back pay which would have to be awarded plaintiff were her appeal successful. The Postal Service contends, *inter alia,* that any such award would be made from the budget of the Postmaster of New York, New York and since the hearing examiner was an Assistant Postmaster of the Woodmere, New York, facility, he could not be viewed as having a financial stake in the outcome of the appeal. Plaintiff has not proffered any support for the contention except this rather farfetched allegation, and it is clear that the mere fact that the Hearing Officer was employed by the same agency proffering the charges does not constitute a violation of due process in the absence of any substantial involvement by him in the investigation or prosecutorial functions relating to plaintiff's case. *See Withrow v. Larkin,* 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 912 (1975); *R. A. Holman & Co. v. SEC,* 366 F.2d 446, 452–453 (2d Cir. 1966), *cert. denied,* 389 U.S. 991, 88 S.Ct. 473, 19 L.Ed.2d 482 (1967). Moreover, plaintiff raised no

claim of bias on the agency level; instead, both she and her counsel conceded the fairness of the agency hearing.

Plaintiff next claims that the Postal Service was precluded from upholding plaintiff's discharge for improper performance of her duties by the Civil Service Commission's findings on her discrimination complaint. The Equal Employment Opportunity Commission Hearing Officer had sustained the discrimination charges, but the Postal Service reversed that determination. The Civil Service Commission Appeals Review Board affirmed, concluding that "while the evidence indicates that [plaintiff's] removal could have resulted from the personal animosity of her supervisors," it did not indicate discriminatory motivation. This finding cannot be viewed as one of discharge for reasons other than poor job performance; the issue of whether plaintiff's referrals of May 11, 1973 constituted improper performance of her duties was not before that agency. It is clear that the Postal Service was not precluded from holding a hearing to consider that question.

The Postal Service's decision to remove plaintiff is reviewable, as noted at the outset of this opinion, only to determine whether it was arbitrary, capricious or constituted an abuse of discretion. I am not empowered to consider the question confronted by that agency *de novo*; nor is my agreement or disagreement with its conclusion relevant. The focus of my inquiry at this point is merely on whether the agency's decision is rationally supported by the record.

At the hearing before the Postal Service, each side offered the expert testimony of a physician and two nurses, including plaintiff who testified on her own behalf. Of the Postal Service witnesses, the physician—Area Medical Officer Dr. Bistreff—and one nurse testified that it was medically improper for plaintiff to have referred four of the five patients, while the other nurse testified that all five referrals were medically unnecessary. In addition, based on the information entered by plaintiff on the medical charts, one of the nurses testified to the lack of adequate treatment provided by plaintiff to three of the employees before referring them to the hospital.

Of the witnesses who appeared on plaintiff's behalf, the physician attested to the propriety of the referrals, although he conceded that some of the patients could have been asked to wait until the Postal Service physician came on duty; the nurse other than plaintiff who testified stated that three of the four employees should not have been referred to the hospital and that one of the properly referred patients should not have been taken by ambulance. Based on this testimony, the Hearing Officer found, and the Postal Service agreed, that plaintiff had exercised poor nursing judgment and had engaged in unnecessary medical action which constituted improper performance of her duties. This conclusion had ample support in the record and was neither arbitrary nor capricious. The fact that the agency considered plaintiff's prior disciplinary record and chose to discharge her rather than subject her to some lesser sanction was neither irrational nor outside the proper exercise of its discretion.

Accordingly, plaintiff's motion for summary judgment is denied, that of defendant's is granted.

IT IS SO ORDERED.