**Patrick D. CIOPPA, Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE, Defendant.**

**No. CIV–84–627T.**

United States District Court, W.D. New York.

Oct. 4, 1984.

Geiger & Rothenberg, Rochester, N.Y. (David Rothenberg, Rochester, N.Y., of counsel), for plaintiff.

Salvatore R. Martoche, U.S. Atty., Rochester (Jonathan W. Feldman, Rochester, N.Y., of counsel), Vanessa A. Miree, Office of Labor Law, U.S. Postal Service, Washington, D.C., for defendant.

### MEMORANDUM DECISION AND ORDER

TELESCA, District Judge.

### INTRODUCTION AND PROCEDURAL HISTORY

On February 3, 1984, plaintiff, Patrick Cioppa, was terminated from his employment with defendant, United States Postal Service, allegedly as a result of unsatisfactory performance during his probationary period. On February 23, 1984, plaintiff appealed his termination to the Merit Systems Protection Board. Since plaintiff was a probationary employee, his appeal was dismissed for lack of appellate jurisdiction. On May 30, 1984, plaintiff brought this action against defendant under 39 U.S.C. Section 409(a), alleging that his dismissal

was "arbitrary and capricious" and occurred under suspicious circumstances pointing to fraud. The defendant moved for an order dismissing the action, or in the alternative for summary judgment, on the grounds that the Court lacks subject matter jurisdiction and that the complaint fails to state a claim upon which relief can be granted. After hearing the argument of counsel, this Court denied defendant's motions in an oral decision on September 5, 1984.

On September 19, 1984, defendant brought the present motion, urging this Court to reconsider the defendant's earlier motions, or in the alternative, to certify the question of law at issue in this case for interlocutory appeal pursuant to 28 U.S.C. Section 1292.

## DISCUSSION

### SUBJECT MATTER JURISDICTION

#### I.

At the outset, it would appear that subject matter jurisdiction over this action is proper under 39 U.S.C. Section 409(a), which provides that, with one exception not applicable here, "the United States district courts shall have original but not exclusive jurisdiction over all actions brought by or against the Postal Service." Relying in part upon this general jurisdictional grant, plaintiff argues that this Court has the "inherent non-statutory power of judicial review" over administrative agency action to guard against "arbitrary and capricious" decisions. Defendant, relying principally upon *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), argues that a dismissal of a probationary employee is a matter strictly within the discretion of the federal agency and cannot be reviewed in federal court, even if plaintiff's dismissal were in fact "arbitrary and capricious." I disagree.

As a preliminary matter, it must be emphasized that the question before this Court is extremely narrow. Plaintiff does not allege that his dismissal violated any of his constitutional rights. Moreover, plaintiff frankly concedes that his dismissal complied with the minimal procedural requirements imposed by applicable federal law for probationary employees. Plaintiff contends simply that his discharge was "arbitrary and capricious" and that it was procured by fraud and urges this Court to exercise review only on that basis. Defendant, for its part, candidly acknowledges that there are several "limited exceptions" to the general rule which immunizes the discharge of a probationary employee from judicial review, but denies that this case falls within a recognized exception, even if plaintiff's allegations are true. The only question of law to be resolved, therefore, is whether this Court has the non-statutory power to review administrative personnel decisions which are allegedly "arbitrary and capricious".

39 U.S.C. Section 410(a) specifically exempts the Postal Service from the requirements of the Administrative Procedure Act (APA) 5 U.S.C. Section 701 *et seq.*, including the provision of the APA authorizing judicial review over arbitrary and capricious agency action. 5 U.S.C. Section 706(2)(A). Although this Court is not empowered under the APA to determine whether a Postal employee's dismissal was arbitrary or capricious, the question remains open as to whether Congress affirmatively intended to forbid such review.

> The question is phrased in terms of "prohibition" rather than "authorization" because a survey of our cases shows that judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress ... [O]nly upon a showing of "clear and convincing evidence" of a contrary legislative intent should the courts restrict access to judicial review.

*Abbott Laboratories v. Gardner*, 387 U.S. 136, 140, 141, 87 S.Ct. 1507, 1510, 1511, 18 L.Ed.2d 681 (1967) (Citations omitted).

Consequently, the mere absence of express statutory authorization does not necessarily foreclose this Court from exercis-

ing limited judicial review over Postal Service actions. As the Court reasoned in *Burns v. United States Postal Service,* 380 F.Supp. 623, 626 (S.D.N.Y.1974),

> There is nothing in the legislative history of the [Postal] Reorganization Act which suggests that Congress either impliedly or expressly intended to commit [employee compensation] entirely to the Postal Service's discretion. In fact, just the opposite conclusion may be inferred from the enactment of Section 409 which grants original jurisdiction to the District Court of "all actions brought by or against the Postal Service" ... The existence of a jurisdiction-conferring section like Section 409 provides the basis for maintaining a " 'nonstatutory' review action". Byse and Fiocca, Section 1361 of the Mandamus and Venue Act of 1962 and "Nonstatutory" Judicial Review of Federal Administrative Action, 81 Harvard Law Review 308, 321, 323, (1967).

As the Supreme Court observed in *Christian v. New York State Department of Labor,* 414 U.S. 614, 622, 94 S.Ct. 747, 751, 39 L.Ed.2d 38 (1974), an action brought by a probationary Postal employee challenging her dismissal, "the fact that the employing agency's decision is not statutorily subject to judicial review does not preclude review of the agency's procedure used to reach that determination."

Despite the absence of express statutory authorization for judicial review, and the fact that the Postal Service enjoys the widest latitude in its personnel decisions, virtually every federal court confronting the issue has held that Postal Service employees are nonetheless entitled to non-statutory judicial review as a safeguard against arbitrary and capricious dismissal, in light of the "strong presumption in favor of judicial review of administrative action, especially in conjunction with the general jurisdictional grant of 39 U.S.C. Section

409(a)." *Jordan v. Bolger,* 522 F.Supp. 1197, 1202 (N.D.Miss.1981), *affirmed,* 685 F.2d 1384 (5th Cir.1982), *cert. denied,* 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994 (1983). Although a federal court may not second guess the wisdom of administrative personnel decisions, federal courts routinely review dismissals of Postal Service employees for the limited purpose of ensuring that such decisions are neither arbitrary nor capricious—precisely the sort of review requested by plaintiff in this case. *Book v. U.S. Postal Service,* 675 F.2d 158 (8th Cir. 1982); *Yacavone v. Bolger,* 645 F.2d 1028 (D.C.Cir.1981), *cert. denied,* 454 U.S. 844, 102 S.Ct. 159, 70 L.Ed.2d 130 (1981); *Adkins v. Hampton,* 586 F.2d 1070 (5th Cir. 1978); *Alsbury v. U.S. Postal Service,* 530 F.2d 852 (9th Cir.1976), *cert. denied,* 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976); *Ross v. U.S. Postal Service,* 556 F.Supp. 729 (N.D.Ala.1983); *Poole v. U.S. Postal Service,* 540 F.Supp. 105 (S.D.Ohio 1982); *Oates v. U.S. Postal Service,* 444 F.Supp. 100 (S.D.N.Y.1978); *Withers v. U.S. Postal Service,* 417 F.Supp. 1 (W.D.Mo.1976).

Additionally, federal courts have also exercised their inherent power of review over "arbitrary or capricious" agency action in cases involving the dismissal of probationary Postal employees. *Jordan v. Bolger,* 522 F.Supp. 1197 (N.D.Miss.1981), *affirmed,* 685 F.2d 1384 (5th Cir.1982), *cert. denied,* 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994 (1983); *Neal v. U.S. Postal Service,* 468 F.Supp. 958 (D.Utah 1979). Since this limited form of judicial review exists independently of any statutory grant, it applies equally to the dismissal of probationary and permanent employees, despite the vast difference in the procedural protections enjoyed by the two groups under applicable federal statutes.[1]

Although the exercise of non-statutory judicial review over "arbitrary or capricious" administrative action may not be the

---

1. Since the form of judicial review requested by plaintiff in this case has been widely obtained by nonprobationary employees as well, there is

no merit to defendant's argument that the relief sought by plaintiff would constitute a greater

universal rule in the federal courts,[2] it is beyond question the rule prevailing in this circuit. In a case brought by a Postal employee challenging his dismissal, the Second Circuit long ago laid down the rule that "the taking of disciplinary action against Government employees, including the invocation of the sanction of dismissal, is a matter of executive discretion, and is subject to judicial supervision only to the extent required to insure 'substantial compliance with the pertinent statutory procedures provided by Congress' and to guard against arbitrary or capricious action." *McTiernan v. Gronouski,* 337 F.2d 31, 34 (2d Cir.1964) (citations omitted). *Accord, Burns v. U.S. Postal Service,* 380 F.Supp. 623 (S.D.N.Y.1974). Apparently without exception, the courts of this circuit have consistently held that dismissals from the Postal Service are subject to this limited judicial review to guard against arbitrary or capricious action.[3] *Grebosz v. U.S. Civil Service Commission,* 472 F.Supp. 1081 (S.D.N.Y.1979) (ordering reinstatement of

Postal employee dismissed in arbitrary and capricious manner); *Lee v. Bolger,* 454 F.Supp. 226 (S.D.N.Y.1978); *Oates v. U.S. Postal Service,* 444 F.Supp. 100 (S.D.N.Y. 1978). *See also, Lutz v. U.S. Postal Service,* 538 F.Supp. 1129, 1134 (E.D.N.Y.1982) (federal courts may exercise limited review over the procedures used to reach postal service personnel decisions); *McDowell v. Goldschmidt,* 498 F.Supp. 598 (D.Conn. 1980) (applying "arbitrary and capricious" standard of review to dismissal of air traffic controller by FAA).

## II.

Notwithstanding all of the foregoing, defendant argues that this Court has no jurisdiction to determine whether plaintiff's discharge was "arbitrary or capricious", in light of the Supreme Court's decision in *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). According to defendant, *Bishop* held that, in the absence of a constitutional or statutory violation, a

---

measure of protection than that afforded to career Postal employees.

**2.** I use the words "may not" advisedly, for defendant has not cited a single decision in which a court squarely confronted this particular question of law and reached a contrary result. The solitary exception to this otherwise universal rule may be *Bartholomew v. United States of America,* Docket No. 81–C–5096 (N.D.Ill., 1983), *affirmed on other grounds,* slip opinion No. 83–1989 (7th Cir. July 18, 1984), in which the District Court apparently held (in an unpublished decision) that it lacked jurisdiction to determine whether a discharge was arbitrary and capricious, but that particular question of law was neither challenged on appeal nor addressed by the 7th Circuit.

**3.** *Smith v. Lehman,* 533 F.Supp. 1015 (E.D.N.Y. 1982), *aff'd.,* 689 F.2d 342 (2d Cir.1982), *cert. denied,* 459 U.S. 1173, 103 S.Ct. 820, 74 L.Ed.2d 1018 (1983), upon which defendant places great reliance, is not to the contrary. In that case, the Court of Appeals held that a probationary employee of the United States Navy had no constitutional or statutory right to an administrative hearing prior to his termination. That holding is irrelevant in the present case, however, for plaintiff concedes that his constitutional rights have not been violated, and does not request a hearing upon the merits of his discharge. He merely seeks judicial review as to the question

of whether the procedures used to determine his fitness for continued employment were "arbitrary and capricious", an issue which was not before the Court of Appeals in *Smith.* (In fact, the plaintiff in *Smith* originally also alleged that his dismissal was "arbitrary and capricious" under the APA, but that claim was dismissed by the District Court on the grounds of sovereign immunity, for reasons not applicable here. That decision was not challenged on appeal, and therefore was not reviewed by the Second Circuit. 689 F.2d at 345, footnote 6.)

In support of its motion to dismiss, defendant's two memoranda of law cite only five other cases from this circuit. In two of those cases, as in *Smith,* the Courts held that probationary employees are not constitutionally entitled to a pre-termination administrative hearing on the merits of their discharge, but did not address the question of law before this Court. *Chu v. Schweiker,* 690 F.2d 330 (2d Cir.1982); *Christian v. New York State Department of Labor,* 347 F.Supp. 1158 (S.D.N.Y.1972), *vacated on other grounds,* 414 U.S. 614, 94 S.Ct. 747, 39 L.Ed.2d 38 (1974). In the other three cases, where the Courts were faced with the same question of law now before me, all three courts concluded that they had the power to exercise the sort of limited review requested by plaintiff in this case. *Lutz v. U.S. Postal Service,* 538 F.Supp. 1129 (E.D.N.Y.1982); *McDowell v. Goldschmidt,* 498 F.Supp. 598 (D.Conn.1980); *Oates v. U.S. Postal Service,* 444 F.Supp. 100 (S.D.N.Y.1978).

federal court can never review any aspect of personnel decisions made by a public employer, including the procedures used to reach the decision. In effect, the defendant urges this Court to adopt an interpretation of *Bishop* which would require the reversal of virtually every decision cited in part I of this opinion. That is an invitation which I cannot accept.

At the outset, it is clear that the defendant's reading of *Bishop* draws no support from the actual holding of the case itself. The Court held that a probationary city policeman had no constitutional right to receive "a hearing to determine the sufficiency of the cause for his discharge." *Id.* 342, 96 S.Ct. at 2076. That holding is irrelevant to the present action, for plaintiff has neither alleged a violation of his constitutional rights, nor requested a hearing to determine the sufficiency of the cause of his discharge. He argues only that the procedures used to evaluate his competence were "arbitrary and capricious", and requests judicial review on that limited basis alone. The petitioner in *Bishop* made no such allegation, and the propriety of such review was not explicitly addressed anywhere in the Court's opinion.

Despite the narrowness of the actual holding in *Bishop*, defendant argues that the possibility of judicial review in the present case is foreclosed by the expansive language of the opinion's final paragraph, in which the Court stated that "the federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies." *Id.,* 349, 96 S.Ct. at 2080. Quite clearly, the Court did not intend to intimate that agency personnel decisions are always inappropriate matters for review in federal

court.[4] On the contrary, it is clear from the remainder of the opinion's concluding paragraph that the Court had in mind only those situations in which a discharged employee requests a federal court to substitute its judgment for that of the agency on the merits of the dismissal decision.

> We must accept the harsh fact that numerous individual *mistakes* are inevitable in the day-to-day administration of our affairs. The United States constitution cannot feasibly be construed to require federal judicial review for every such *error*. In the absence of any claim that the public employer was motivated by the desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if *erroneous*, can best be corrected in other ways. The Due Process Clause ... is not a guarantee against *incorrect* or *ill-advised* personnel decisions.

*Id.* 349–350, 96 S.Ct. at 2080 (emphasis added). This understanding of the *Bishop* decision is fully consistent with the facts of that case, in which petitioner sought to prove "that he was a competent police officer" and that his discharge therefore must have been "a mistake and based on incorrect information." *Id.* 348,[5] 96 S.Ct. at 2079.

For the foregoing reasons, I conclude that *Bishop v. Wood* left entirely unaffected the longstanding and universal availability of limited federal judicial review over arbitrary and capricious agency conduct. Significantly, plaintiff has failed to cite a single subsequent case in which any Court has adopted a contrary interpretation of *Bishop*. Indeed, in one case relied upon by

---

**4.** In its memorandum of law, defendant tacitly concedes that the quoted language from *Bishop* cannot be read too literally, for defendant acknowledges that there are at least three exceptions in which federal courts may properly exercise review over administrative agency personnel decisions.

**5.** In emphasizing the scope of its holding, the Court did state by way of dictum that the petitioner's discharge would not have violated his constitutionally protected "liberty" even if the

reasons given for his dismissal had been deliberately falsified, and not merely incorrect. 426 U.S. 345, 349 at footnote 13, 96 S.Ct. 2077, 2080 at footnote 13. Although the Court stated that deliberate fraud would not affect "our analysis of the Federal Constitutional question", *Id.,* it gave absolutely no indication that such extreme circumstances would also leave unaffected the propriety of limited judicial review on nonconstitutional grounds.

defendant, the D.C. Circuit Court of Appeals (perhaps the only Circuit Court to directly address the question) expressly held that the limitations imposed on federal court jurisdiction by *Bishop* have not foreclosed the availability of "arbitrary or capricious" review.

> While the transition from unreviewability to reviewability of adverse personnel actions against federal employees has left a legacy of some disagreement and confusion in the reported cases, it is at least reasonably well settled that, whatever is at least reasonably well settled that, whatever its exact scope, judicial review in the federal courts is necessarily limited. Federal judges do not sit as ombudsmen for government employment relations [citing *Bishop v. Wood*], nor do we indulge in the conceit of substituting our own judgment *ad libitum* for that of the agency. Rather, we concern ourselves in the personnel business only insofar as is necessary to assure that the action challenged (1) is not *arbitrary or capricious;* (2) was reached in conformity with relevant procedural requirements; and (3) was not otherwise unconstitutional.

*Doe v. Hampton*, 566 F.2d 265, 271–72 (D.C.Cir.1977) (emphasis added) (footnotes omitted).

Although the Supreme Court's opinion in *Bishop* concludes with rather sweeping language (which might lend itself to some misinterpretation), one recent decision correctly observed that "many federal district courts and courts of appeals nevertheless have found that the decision in *Bishop v. Wood* does not preclude review of personnel decisions made by government employers, even in the absence of any allegation of a violation of constitutional rights." *Ross v. United States Postal Service*, 556 F.Supp. 729, 732 (N.D.Alabama 1983). The Court noted that there is still ample precedent "for providing a narrowly limited review of personnel decisions made by the Postal Service" to determine "whether its actions were arbitrary or capricious" *Id.* 733 (citations omitted). On the basis of the foregoing review of the case law, I must agree.

### III.

Defendant has made one further argument which is worthy of no more than passing comment. Defendant has placed great reliance on a number of circuit opinions which have reiterated the basic fact, irrelevant here, that probationary employees have no constitutional or statutory right to an administrative hearing on the merits of their dismissal. If plaintiff has no right to an administrative hearing, defendant reasons, it should follow with even greater force that there is no right to a hearing in federal court. But that line of reasoning misses the point entirely. Plaintiff does not (and could not) ask this court to conduct an independent investigation into the wisdom of an administrative agency's discretionary decision as to his fitness for continued employment. On the contrary, he alleges in effect that there was no evaluation of his competence for this Court to review, because his dismissal was procured through fraud and deception for purely personal reasons. That is a different matter altogether, and it falls squarely within the jurisdiction of this Court's inherent power of review.

The same response can also be made to defendant's argument that, even if this Court has subject matter jurisdiction, "the plaintiff is not entitled to discovery or a trial *de novo*," since "judicial review is strictly limited to a review of the administrative record." (Brief for defendant, pages 9, 10.) In support of this proposition, defendant rather surprisingly cites four cases in which federal courts exercised judicial review over allegedly "arbitrary and capricious" agency action—precisely the sort of review which defendant argues is beyond the powers of this Court. In each of those cases, moreover, the courts were reviewing dismissals which had been previously examined at administrative hearings, typically before the Merit Systems Protection Board. In the present case, however, since plaintiff was only a probationary employee, his request for an administrative hearing was denied, and so

there is no administrative record for this Court to review.

## IV.

Finally, in the event that this motion should be denied, defendant has asked this Court to certify the question of law at issue in this case for interlocutory appeal under 28 U.S.C. section 1292(b). That request is also denied. Defendant has alleged that "there is a substantial difference of opinion with respect to the question of law" (Brief for defendant, page 11). Indeed there is, at least between the parties to this dispute. But the statute requires something more: there must be "substantial ground for difference of opinion" as to a controlling question of law, 28 U.S.C. section 1292(b), and that is something else altogether. It is established beyond dispute that this Court possesses the inherent power to grant the limited scope of review requested by plaintiff, and the grounds for defendant's difference of opinion are "insubstantial" as best.

## SUMMARY JUDGMENT

In its second motion, defendant argues in the alternative that it is entitled to summary judgment because there is no genuine question of fact as to whether plaintiff's dismissal was "arbitrary or capricious." Before that question can be resolved, it is necessary to flesh out the meaning of the applicable standard of review.

Under the most widely accepted formulation, administrative action is "arbitrary and capricious" when it is "willful and unreasoning action, without consideration and in disregard of the facts or circumstances of the case." *First National Bank of Fayetteville v. Smith*, 508 F.2d 1371, 1376 (8th Cir.1974), *cert. denied*, 421 U.S. 930, 95 S.Ct. 1655, 44 L.Ed.2d 86 (1975). *Accord, Jordan v. Bolger*, 522 F.Supp. 1197, 1202 (N.D.Miss.1981), *affirmed*, 685 F.2d 1384 (5th Cir.1982), *cert. denied*, 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994 (1983); *Coleman v. Darden*, 595 F.2d 533, 539 (10th Cir.1979), *cert. denied*, 444 U.S. 927, 100 S.Ct. 267, 62 L.Ed.2d 184 (1979). In the application of this standard, the Supreme Court has stated that:

> The Court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The Court is not empowered to substitute its judgment for that of the agency.

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971) (citations omitted).

In reviewing administrative decisions which call for specialized competence, the Supreme Court has stated that the agency's order should stand unless the order represents a clear attempt to achieve ends other than those perceived by Congress when delegating the authority to make such findings. *NLRB v. Seven-up Bottling Company*, 344 U.S. 344, 346–47, 73 S.Ct. 287, 288–89, 97 L.Ed. 377 (1953). Defendant concedes that the purpose of the system of probationary employment is not to give the Postal Service discretion for its own sake, as an end in itself, but rather "is intended to enable a federal agency to determine whether a prospective career employee possesses the qualifications and character worthy of a permanent appointment." (Brief for defendant, page 7.) Applying that standard to the instant situation, it has been held that when the discharge of a Postal employee was made in a genuine effort "to promote the efficiency of the service," such action "does not constitute an attempt to achieve ends other than those perceived by Congress when delegating authority to the Postal Service over its personnel affairs," and therefore is neither arbitrary nor capricious. *Poole v. U.S. Postal Service*, 540 F.Supp. 105, 111 (S.D.Ohio 1982). In *Youtsler v. Koeppel*, C-1-79-641 (S.D.Ohio March 20, 1981) *affirmed*, 81-3300 (6th Cir. May 24, 1982), the same Court held that a decision to discharge a Postal Service employee had been "a clear attempt to achieve some end other than the efficiency of the service"

and was therefore arbitrary and capricious. *Poole, supra,* at 111.

Applying the foregoing standards to the instant case, it must be determined whether plaintiff has raised any genuine question of material fact in support of his allegation that his dismissal was arbitrary and capricious. This inquiry requires a brief review of the circumstances surrounding his discharge. On November 12, 1983, plaintiff was hired by the Postal Service for a ninety day probationary period of employment. Throughout his probationary employment, plaintiff worked for defendant six days each week, eleven hours every day.

On December 9, 1983, plaintiff received his required thirty day evaluation from Supervisor Moynihan. That evaluation rated plaintiff satisfactory (the best possible rating) in every category but one. He was not rated in the category of "progress in learning required schemes", since he had not passed the required LSM training exam. On January 9, 1984, plaintiff received identical ratings from Supervisor Lamendola on his required sixty day evaluation. In addition, that second report recommended plaintiff's retention.

On January 25, 1984, plaintiff took his required training exam for the first time, but did not pass the exam. Later that day, he received his eighty day evaluation from Supervisor Lamendola, in which he once again was rated satisfactory in every category but one. For the first time, plaintiff was rated unsatisfactory for progress in learning required schemes, because he had failed the test.

The following day, January 26, plaintiff received a notice from the Postmaster indicating that he would be permitted to retake his LSM exam. The letter also reminded plaintiff that he was required to pass the exam sometime before the expiration of his probationary period on February 8, 1984, or else he would be terminated on that date. Several days later, on January 31, 1984, plaintiff retook and passed the LSM exam.

On February 3, 1984, five days before the end of his probationary term, and allegedly without any prior warning whatsoever, plaintiff was advised that he was being fired. He was shown a letter from Postmaster Schubert dated that same day which stated that he was being terminated as a result of unsatisfactory performance. Although he was informed that he had been written up by some supervisors, he was not shown any copies of any adverse memoranda or evaluation.

About one or two weeks later, plaintiff was shown for the first time a copy of the "special" evaluation which apparently was the basis for his termination. On the "special" evaluation, which was prepared by Supervisor Lamendola and dated January 30, plaintiff was rated unsatisfactory in eight out of eleven categories. This rather striking reversal was ostensibly based upon statements prepared by four of plaintiff's supervisors. In support of its instant motion, defendant has submitted copies of those reports, which were all dated January 28 and January 29—ostensibly between the time plaintiff received his last favorable evaluation and the date on which he passed the LSM test. (Defendant's Exhibit 6.)

■ Defendant now argues that it is entitled to summary judgment, because these reports represent the genuine and good faith judgment on the part of plaintiff's supervisors that his dismissal would be in the best interest of the Postal Service. If there were no reasons to doubt that assertion, I would not concern myself with the wisdom of that judgment, and my inquiry would come to an end. Plaintiff argues, however, that several features of the circumstances surrounding his dismissal are sufficient to create at least some suspicion as to defendant's good faith. For the following reasons, I must agree.

To begin with, it must be noted that the copies of the statements provided by the defendant are not in the form of either deposition or affidavit. They are not sworn, they are not originals, and they are not even certified as authentic by any sworn affidavit. Curiously, they are not included in the bound collection of defend-

ant's exhibits which were certified as "true and correct copies of original U.S. Government records ... in the official custody of the United States Postal Service" by Mr. Stephen Alpern. Indeed, it is not obvious that these statements can be properly considered by this Court under Federal Rules of Civil Procedure 56(c), although plaintiff has not contested their introduction. Two of the four statements complained of events which allegedly occurred before plaintiff received his last two favorable evaluations, and a third offers no clue as to the date of the incidents alleged therein.

Even though the alleged episodes of plaintiff's poor work performance began as early as December 22, 1983, he apparently received no formal criticism or warning until the day of his termination. On the contrary, he received satisfactory evaluations on January 9 and again on January 25. He was formally encouraged in writing on January 26 to retake the LSM test, supposedly to avoid automatic termination on February 8. Although the negative reports of his supervisors, and the "special" evaluation based upon them, were allegedly prepared between January 28 and January 30, he received no notice of any of this action until February 3—shortly after he passed the test which had stood as the final obstacle to his avoiding automatic termination. Oddly enough, one of the very few categories in which plaintiff was rated satisfactory in his special evaluation was "attendance—punctuality—reliability", even though those were the very attributes about which each of his four supervisors had complained. It appears that the dates on some of the forms have been altered for some reason. Finally, in their sworn affidavits, plaintiff and his attorney contend that they possess a signed and written statement by an as yet anonymous co-worker who was told by one of plaintiff's supervisors that they "pulled a fast one" in procuring his dismissal.

Plaintiff has proposed the theory that the unsworn statement of his supervisors and the special evaluation based upon them do not constitute a genuine or good faith exercise of defendant's administrative discretion. Rather, they were contrived immediately after he passed his LSM training exam, and had been backdated to conceal any evidence of irregularity. As it presently stands, the factual record contains abundant and clear evidence that plaintiff's dismissal was highly irregular, although it remains to be determined whether his termination was indeed arbitrary and capricious. Plaintiff has surely raised sufficient questions of fact to survive a motion for summary judgment at this time.

### CONCLUSION

For all of the reasons outlined above, and upon careful reconsideration of the arguments raised by counsel, I would be remiss if I were to grant defendant's motion for dismissal or summary judgment. Defendant's several motions are denied in all respects.

It is conceded that the institution of probationary employment is largely designed for the very purpose of permitting agencies like the Postal Service to quickly and efficiently exercise their specialized competence over personnel decisions, subject only to the most minimal procedural restrictions. Defendant has repeatedly and persuasively reminded this Court that those purposes would be substantially undermined if any significant number of probationary employees could routinely challenge their dismissals in Federal Court and survive a pre-answer motion for summary judgment. Given the highly unusual circumstances of the present case, however, it is abundantly clear that the limited scope of this decision does not carry with it any risk of exposing defendant to that possibility.

ALL OF THE ABOVE IS SO ORDERED.