Alfred S. JORDAN, Plaintiff,

v.

William F. BOLGER, Postmaster General of the United States and Eleanor Holmes Norton, Chairman of the Equal Employment Opportunity Commission, Defendants.

No. EC 80-207-WK-P.

United States District Court,
N. D. Mississippi, E. D.

Oct. 5, 1981.

William M. Pace, Aberdeen, Miss., for plaintiff.

John Hailman, Asst. U. S. Atty., Oxford, Miss., for defendants.

## MEMORANDUM OF DECISION

KEADY, Chief Judge.

In this employment discrimination action, plaintiff Alfred S. Jordan sues defendant William Bolger, Postmaster General of the United States, contending that he was wrongfully discharged from his job as part-time clerk-carrier with the United States Postal Service in Aberdeen, Mississippi. Plaintiff bases his claims on the Administrative Procedure Act, 5 U.S.C. § 551 et seq. and the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., alleging that his termination was arbitrary and capricious and because of his age. Cross motions for summary judgment have been previously denied. After evidentiary hearing and oral argument, the court makes findings of fact and conclusions of law as required by Rule 52(a), F.R.Civ.P., as follows:

### I. FINDINGS OF FACT

In 1974, plaintiff, then age 48, took the postal examination and achieved a score of 92.8 including a ten point veteran's preference, which made him the top scorer then on the Aberdeen register. J. K. Baker, the postmaster, told plaintiff he would be notified when a position became available.

In November 1976, Baker employed Cecelia Moon, who had been a part-time postal clerk at Prairie, Mississippi, as a temporary worker during an employee's illness. When

a vacancy occurred for the position of carrier, he first offered the job to her, and she refused. He then offered the position to Wayne Garner, a postal worker at Tupelo who was desirous of being transferred to Aberdeen. Garner accepted. When appointed, Garner, who was over 40 years of age, was not only a transferee but also then tested as No. 1 on the Aberdeen register as a ten point veteran and having a higher score than plaintiff. Under postal regulations, Baker, as the hiring authority, had the option of filling any vacancy by hiring a postal employee transferred from another post office or choosing one of the top three on the Aberdeen register, with preference required for veterans over nonveterans. The postmaster was not required, however, to hire from those on the registry so long as he filled the vacancy with a transferee. It was Baker's practice in hiring from the register to select the person having the top score at the time of appointment.

In mid-November 1976, plaintiff again contacted Baker, who stated that he would have to retake the examination. Being informed to the contrary, plaintiff consulted Mrs. Elaine Byrd, Director of Employee Relations, at Meridian, Mississippi. He complained to her that he was intentionally being passed over by Baker and he had been told that he was required to retest. Mrs. Byrd advised Baker by phone that under revised regulations plaintiff would not have to retest; she also reported to Baker plaintiff's complaint that he was being passed over. In a subsequent conversation, Baker told plaintiff that most other postmasters would never hire him because he had gone over his head. Nevertheless, in June 1977, Baker notified plaintiff to report for work as a part-time clerk-carrier on July 2, 1977. On that same day, Cecelia Moon, who had been continued in temporary employment, was also appointed clerk-carrier as a transferee from Prairie.

According to plaintiff, on the day he reported for work, Baker and Bobby Jackson, Superintendent of Postal Operations, began to openly talk about firing him. Two rural mail carriers, B. D. Allen and Nelson Outlaw, testified that they heard Jackson say that he would "hire and fire" plaintiff because he had gone "over his head." Plaintiff claims that Baker told him, "you'll have to do so many schemes per minute or we will have to let you go."

Plaintiff's first two days on the job (Saturday July 2 and Tuesday July 5) consisted of accompanying Cecelia Moon, who had worked the route to which plaintiff was assigned, in delivering mail on City Route # 3. This training to plaintiff was provided to teach him to case the mail, become familiar with the stops and other duties of the job. Problems with plaintiff's performance began on Wednesday, July 6, when he made his first delivery alone. After plaintiff had cased the mail, Jackson, plaintiff's immediate supervisor, handed him a bundle of advertising circulars also for Wednesday delivery. Plaintiff was unable to deliver all of the circulars that day. Plaintiff asserted that he did not have sufficient time to complete delivery since the circulars were not in the order of the addresses along the route. Jackson, however, disputed this, saying they were presorted according to route sequence. Plaintiff claimed that he combined the remaining circulars with other mail and delivered them the next day. On Thursday, Jackson discovered a number of the circulars in the undeliverable mail bin. Though plaintiff contended they were duplicates, Jackson said they were in fact for addresses on his route. On Friday morning plaintiff reported to Jackson that he had delivered the remaining circulars. Later the same day Jackson observed some of the same circulars under the seat of plaintiff's jeep; and when shown them, plaintiff said someone else must have put them there. Plaintiff continued to maintain he had delivered all of the circulars. Plaintiff's testimony was flatly contradicted by Jackson, who stated that on Saturday he assigned another carrier to deliver the circulars on plaintiff's route. The following Monday Jackson reported the incident to Baker, who had been off the previous week. When plaintiff appeared before Baker, he continued to insist that he had delivered the circulars. That remained his position at trial.

Other incidents arose which made plaintiff's performance appear questionable, such as mislabeling mail, coming to work late, failure to dispatch all outgoing mail, failure to keep proper time record, and taking excessive time to case and deliver the mail.

As a probationary employee, plaintiff was subject to 30, 60 and 90 day evaluations by Jackson, his immediate supervisor. On August 1, Jackson made out the 30–day evaluation on plaintiff's performance and presented him with the evaluation sheet, Form 1750. Three blocks on the form were checked to indicate unsatisfactory performance for casing mail, following instructions and being late for work. Other portions of the form were left blank without rating, yet Jackson had indicated on the form his recommendation that plaintiff be retained. The purpose of the evaluation was to advise the probationary employee of the need to improve in those areas criticized by the supervisors. After reviewing the form with plaintiff, Jackson requested plaintiff to sign it, and he refused, stating that he needed time "to check things out." Jackson agreed to defer the matter for a week. Plaintiff conferred with a veteran's official, James Fitzpatrick, who advised him not to sign an evaluation which was incomplete. When Jackson approached plaintiff about signing, he refused again, but gave Jackson no reason for his action.

Plaintiff was later given written notice of his termination effective August 26, because of unsatisfactory performance. A list of the specific incidents of which Jackson kept a record was not then furnished plaintiff.

Plaintiff at trial tendered an explanation for each shortcoming or mistake committed on the job. The gist of his testimony was that he tried to perform as best he could but received inadequate training for proper performance and felt he was not fairly treated by Baker and Jackson. Allen expressed an opinion that plaintiff received very little training. Other postal employees indicated that plaintiff seemed to be trying his best. Nevertheless, Mrs. Moon and Garner stated that their own training was no different than plaintiff's. Plaintiff never approached Baker or Jackson about needing more training.

Other probationary employees also received evaluations similar to plaintiff's after a month on the job. Moon's and Garner's evaluations each had unsatisfactory marks as well. They did not question the purpose of the evaluation, and signed the forms at Jackson's request. Jackson used their evaluation sheet to point out to Moon and Garner the areas in which they needed improvement. Moon's and Garner's reports were completely filled out, but Jackson stated that he intentionally did not complete plaintiff's form because if he checked all areas in which plaintiff was unsatisfactory, he would have been unable to recommend to Baker that plaintiff be continued in employment.

Jackson discussed the several incidents involving plaintiff with Baker, who testified that he then began considering firing him. The postmaster first sought the opinion of postal employees who had worked with plaintiff as to his job performance and received adverse reports. Allan Pace, a postal clerk, told Baker that he did not think plaintiff would make it. Moon told Baker that despite his efforts, plaintiff was slow doing his work, forgetful, error prone, and not performing well. Baker at this time decided to dismiss plaintiff and terminated him August 26, 56 days after starting on the job.

The weight of the evidence supports Baker's and Jackson's position that plaintiff was fired because of his unsatisfactory work performance. Only Allen and Outlaw supported plaintiff in his assertion that Baker and Jackson intended to fire plaintiff from the very outset of his employment. Furthermore, they were the only witnesses who said that plaintiff had received inadequate instructions and training. We decline to give credence to their testimony. The evidence shows both Outlaw and Allen had their delivery routes shortened because of postal requirements. This action resulted in their pay being cut by approximately

$5,000 per year. Their filing of several grievances against management indicates bias against the Postal Service and hostility toward Baker and Jackson.

Having no reason to doubt the veracity of opposing testimony, we find as a fact that Baker and Jackson did not act arbitrarily and capriciously in firing plaintiff. Baker impressed the court that he was in fact fair and considerate of plaintiff's situation. Jackson, who had known plaintiff since high school, did not oppose his employment and only sought to give him efficient supervision. We reject any notion that either Baker or Jackson were motivated by animosity or spite in regard to plaintiff. We further find as a fact that plaintiff was given sufficient training, but nevertheless failed to do satisfactory work. His proffered explanations for persistent errors, inability to complete the tasks on time, and to comprehend the job are unconvincing. The credible evidence, in our opinion, is that he failed to achieve an average level of job performance. Regrettably, his unfounded suspicions, coupled with poor advice, led plaintiff to refuse to sign the evaluation of his job performance. This clearly exhibited a negative attitude toward any need for improving his work. At the very least, plaintiff's misunderstanding of the evaluation procedure is a rather clear indication of his inability to cooperate with his supervisors. Baker was justified in believing that plaintiff should be terminated as an unsatisfactory worker.

We further find as a fact that age played no part in the decision to dismiss plaintiff. No evidence indicates that age was considered, other than the bare fact that 17 year old Mary Boone Pace was hired to replace plaintiff, then age 48. An inference of discrimination, however, does not arise from this fact since Mary Boone Pace was number one on the hiring register at the time of plaintiff's termination and for that reason was selected by Baker. Moreover, the credible evidence is that she was not considered for employment until Baker decided that plaintiff had to go. Plaintiff's contrary insinuation is completely unfounded. Furthermore, in September 1978, at the time of an EEOC investigation, the average age of postal service employees at the Aberdeen office was 49.3 years; Baker was then 59 and Jackson 43. Finding no evidentiary basis to sustain his claim that his dismissal was age related, we find as a fact that plaintiff was fired solely because of inadequate performance without regard to his age.

## II.  CONCLUSIONS OF LAW

Jurisdiction is clearly present under 39 U.S.C. § 409 which grants the district courts jurisdiction for all suits brought against the postal service. Nevertheless, the parties differ as to the applicability of the Administrative Procedure Act (APA), 5 U.S.C. § 551 et seq., to postal employees. The parties further disagree as to what constitutes a legitimate cause for dismissal under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq. We review each Act separately.

### A.  APA

◼    Section 410(a) of the 1970 Postal Reorganization Act, 39 U.S.C. § 101 et seq. specifically exempts the postal service from the requirements of the APA in regard to employees.[1]  *See Blondo v. Bailar*, 548 F.2d 301, 304 (10 Cir. 1977). Consequently, the court lacks the power under the APA to determine whether plaintiff's dismissal was arbitrary, capricious or an abuse of discretion. *NAACP v. United States Postal Service*, 398 F.Supp. 562 (N.D.Ga.1975). Despite the inapplicability of the APA, most federal courts have held that postal service employees are nonetheless entitled to non-

---

**1.** Section 410(a) provides:

Except as provided by subsection (b) of this section, and except as otherwise provided in this title or insofar as such laws remain in force as rules or regulations of the Postal Service, no Federal law dealing with public or Federal con-

tracts, property, works, officers, *employees*, budgets, or funds, including the provisions of chapters 5 and 7 of title 5, shall apply to the exercise of the powers of the Postal Service. (our emphasis).

statutory judicial review of agency determinations concerning dismissal. We agree that lack of any judicial review would provide no remedy when procedural requirements are not met and would allow arbitrary and capricious dismissal of employees. Moreover, there is a strong presumption in favor of judicial review of administrative action, especially in conjunction with the general jurisdictional grant of 39 U.S.C. § 409(a). *See Neal v. United States Postal Service*, 468 F.Supp. 958, 961 (D. Utah 1979); *Oates v. United States Postal Service*, 444 F.Supp. 100, 102 (S.D.N.Y.1978); *Withers v. United States Postal Service*, 417 F.Supp. 1, 3 (W.D.Mo.1976).

The scope of such nonstatutory review is quite narrow, being limited to determining "whether the administrative action has complied with the required procedural due process or whether the administrative action is arbitrary or capricious." *Coffman v. Bolger*, 590 F.2d 1366 (5 Cir. 1979); *Adkins v. Hampton*, 586 F.2d 1070, 1072 (5 Cir. 1978). Plaintiff contends that he was denied procedural rights by Baker's failure to provide him specific reasons for his dismissal in order for him to respond, and also that there was no basis in fact for his discharge. There is no merit in either contention.

■ It is clear that 5 U.S.C. § 7501 et seq., which governs the suspension and removal of federal employees is applicable to the postal service.[2] Section 7513 of 5 U.S.C. and pertinent regulations allow removal of "an employee only for such cause as will promote the efficiency of the service," and also require prior notice to the employee of the specific reasons for the dismissal and an opportunity for him to respond. By § 7511(a)(1), however, an employee is defined as "an individual who is not serving a probationary or trial period under an initial appointment." Therefore, a probationary employee is not entitled to the procedural rights of a permanent employee and

may be summarily discharged. *Shaw v. United States*, 622 F.2d 520, 527 (Ct.Cl.), *cert. denied*, 449 U.S. 987, 101 S.Ct. 410, 66 L.Ed.2d 252 (1980). Under 5 CFR § 315.804, a probationary employee dismissed for failure to demonstrate his fitness and qualifications for the job is entitled only to advance written notice consisting of "conclusions as to the inadequacies of his performance or conduct." Specific instances of his inadequacy need not be indicated.

■ The discharge letter which Baker presented to plaintiff stating that effective August 26 he would be terminated because of unsatisfactory job performance complied with § 315.804's requirement, and constituted the only procedural action necessary to terminate a probationary employee. Clearly plaintiff was deprived of no procedural rights.

■■ Nor does plaintiff fare better on his claim that he was subjected to arbitrary and capricious dismissal. Agency action is arbitrary and capricious when it is "willful and unreasoning action, without consideration and in disregard of the facts or circumstances of the case." *First National Bank of Fayetteville v. Smith*, 508 F.2d 1371, 1376 (8 Cir. 1974), *cert. denied*, 421 U.S. 930, 95 S.Ct. 1655, 44 L.Ed.2d 86 (1975). We have concluded that plaintiff's termination was grounded on a rational basis as the facts established in the evidence substantiate the postal service determination that he was unqualified for the position. His charge that he was fired without reason and because of dislike or personal animosity on the part of his superiors is simply not supported by the credible testimony. The substantial evidence indicates that Baker and Jackson acted reasonably to promote efficient service and had ample grounds for concluding from plaintiff's shortcomings and attitude that he should not be continued in employment. Because the dismissal was effected

---

**2.** 39 U.S.C. § 1005(a)(1) provides that "the provisions of chapter 75 of title 5 [5 U.S.C. § 7501 et seq.] shall apply to officers and employees of the Postal Service except to the extent of any inconsistency with—

(A) the provisions of any collective-bargaining agreement negotiated on behalf of and applicable to them; or

(B) procedures established by the Postal Service and approved by the Civil Service Commission."

only after due consideration of his overall performance, we decline to hold that it was arbitrary and capricious.

### B. *ADEA*

■ To make out a prima facie case of age discrimination under ADEA, plaintiff must show (1) he was within the protected group (age 40 or older), (2) he was discharged, (3) he was qualified for the position, and (4) he was replaced by a person outside of the protected group. *Williams v. General Motors Corp.*, 656 F.2d 120 at 127 (5 Cir. 1981); *Price v. Maryland Cas. Co.*, 561 F.2d 609, 612 (5 Cir. 1977); *Erwin v. Bank of Mississippi*, 512 F.Supp. 545, 551 (N.D. Miss.1981). Once the plaintiff establishes a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the dismissal. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207, 215 (1981); *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1011 (1 Cir. 1979). Where the defendant has articulated a legitimate reason for dismissal "the plaintiff must then have an opportunity to prove by preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine, supra*, 450 U.S. at 253, 101 S.Ct. at 1093, 67 L.Ed.2d at 215.

■ Plaintiff has tendered proof sufficient to establish a prima facie case of age discrimination. Nevertheless, defendant has effectively rebutted it by convincing evidence that plaintiff was in fact terminated from his job because of unsatisfactory performance. Plaintiff claims that this reason was pretextual and that he was dismissed because of personal animosity and that defendant intended to fire him even before he was hired. He urges the court to find that this is not a legitimate factor on which to base his termination, thereby allowing him to prevail on his age discrimination claim. Defendant, however, argues that having satisfactorily articulated a legitimate reason, plaintiff must show by a preponderance of the evidence that his dismissal was actually related to age.

It is unnecessary, however, to decide whether an employer who fires an employee because of personal animosity, wholly unrelated to age, acts impermissibly under the ADEA. It is sufficient that as the trier of fact we found from conflicting evidence that, despite plaintiff's belief, Baker and Jackson did not act out of spite or dislike in dismissing him from the postal service. Admittedly, plaintiff's superiors on no occasion used explicit language relating to age, and, apart from plaintiff's insinuations that he was fired to make way for a younger person—which we find to be without factual support—there are no circumstances to support an inference he was terminated because of age. To the contrary, defendants' evidence convincingly establishes that plaintiff was fired because of his unsatisfactory job performance. Plaintiff did not demonstrate this reason to be pretextual. Accordingly, plaintiff failed to meet his ultimate burden of proof, and his age discrimination claim necessarily fails.

Let judgment issue dismissing the complaint with prejudice.