William C. BUTLER

v.

**DEPARTMENT OF THE NAVY.**

Civ. A. No. N–82–3541.

United States District Court,
D. Maryland.

Oct. 19, 1984.

E. Nicholson Gault, Jr., and Fairbanks & Gault, Baltimore, Md., for plaintiff.

J. Frederick Motz, U.S. Atty., D. Md., and Robert B. Green, Asst. U.S. Atty., Baltimore, Md., for defendant.

NORTHROP, Senior District Judge.

This cause came before the Court for non-jury trial on October 16, 1984. The complaint filed herein charges the Department of the Navy with violation of the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.*, 29 C.F.R. § 1613.703 *et seq.* by discrimination against the handicapped, violation of Title VII by discrimination based on race and age, and violations of Fifth Amendment due process.

The plaintiff, William C. Butler, is a forty-two year old black male. He is a veteran and was honorably discharged from the U.S. Army. He has on record with the Veterans Administration, effective November 2, 1976, a 30% service connected disability. He was employed by the National Naval Medical Center as a warehouse worker from December 8, 1980 until February 6, 1981. His preferred status, as listed on the Federal Register, as a veteran assisted him in getting the job. He entered employment on probationary worker status. He was terminated February 6, 1981.

*The Law to be Applied*

Before the court are essentially three claims: discriminatory discharge based on race, age or handicap, and violations of Fifth Amendment procedural due process and the Rehabilitation Act by denying to plaintiff the benefit of defendant's regulations governing the employment and termination of employees like plaintiff. The Court will address the discharge issue first.

## UNLAWFUL DISCHARGE

Before determining whether there has been an unlawful discharge, the Court must note that the United States is permitted great discretion in deciding whether to retain, advance or terminate a probationary employee. 5 U.S.C. § 7501 *et seq.; Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *Casey v. Roudebush,* 395 F.Supp. 60 (D.Md.1975).

The United States may not, of course, dismiss any employee, regardless of status, for impermissible reasons of race, handicap or age. The standards for race, age or handicap discrimination are not identical. For instance, age or handicap may be, in limited situations, a factor in some terminations. 29 U.S.C. § 623(f); *Clayton v. Alexander,* 29 FEP Cases 727 (M.D.Ala.1981). Race is virtually never a legitimate factor.

The employer has available a basic threshold defense against the discriminatory discharge claims. He may show that he terminated the employee for legitimate reasons unrelated to age, race or handicap. The burden then shifts to the employee to show that these alleged nondiscriminatory reasons were merely a pretext for discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Cline v. Roadway Exp., Inc.,* 689 F.2d 481, 484–86 (4th Cir. 1982); *Prewitt v. United States Postal Service,* 662 F.2d 292 (5th Cir.1981); *Wright v. National Archives & Records Service,* 609 F.2d 702 (4th Cir.1979); *Campbell v. U.S. Navy,* 567 F.Supp. 356, 357 (D.Md.1983); *Taylor v. American Wholesalers,* 17 FEP Cases 1586 (D.Md. 1978).

■ Applying this test to the facts adduced from the evidence and testimony at trial, the Court finds that defendant has carried its burden of demonstrating, by a preponderance of the evidence, that a valid and legitimate reason existed for its removal and failure to reinstate plaintiff. Further, the Court finds that plaintiff has failed to come forward with any degree of credible evidence to establish that the reason for his removal was a mere pretext for discrimination.

*The Testimony and Evidence.*

The plaintiff, Mr. Butler, is black and 42 years old. The parties dispute whether he is handicapped, but the Court will assume for purposes of the following analysis that he is.

At the outset, I note that no statistical basis for age or race discrimination has been established. There is not a wide discrepancy between the percentages of black or older employees terminated and the percentages of black and older employees in general. (Joint Exhibit No. 1, Tab 22, 23).

The plaintiff had an exceptionally bad attendance record. He was frequently absent, often without excuse. (Joint Exhibit No. 1, Tab 28). Even his excused absences were sometimes doubtfully based. Mr. John Dunmire, one of Mr. Butler's supervisors, testified that on one occasion Mr. Butler showed up in the middle of a string of absences to pick up his paycheck. Mr. Dunmire offered Mr. Butler the opportunity to work that day, but Mr. Butler refused because he was with his wife. Later Mr. Butler claimed he was "incapacitated" that whole week, including the day he showed up for his check. Mr. Butler also claims he couldn't make it to work because he often lacked "gas money"; but Mr. Dunmire testified that he offered to pick up Mr. Butler halfway to the job site. Plaintiff did not accept that offer. Mr. Butler was also often late on those occasional days he decided to work. He often failed to give adequate notice of his tardiness or absences. (Joint Exhibit No. 1, Tab 4).

On the job, Mr. Butler's problems continued. He took unauthorized breaks. (*Id.*) He did not follow orders. (*Id.*) In his sworn affidavit, Mr. Al Price, one of Mr. Butler's immediate supervisors, relates that on one occasion Mr. Butler even physically threatened him, and told him "he didn't want to hear anything from me." This occurred because Mr. Butler had to be given a task he didn't like after his tardiness forced assignment changes. (Joint Exhibit No. 1, Tab 5). Mr. Butler even testified he didn't think his supervisor had any right to "dictate" to him. Others also stated in their affidavits that Mr. Butler was a belligerent and insubordinate employee. (Joint Exhibit No. 1, Tab 8, 9). Although only Mr. Dunmire testified that he was aware that Mr. Butler had a service-related disability, neither he nor anyone else testified or stated that they were ever aware of that disability or any disability affecting Mr. Butler's performance. Mr. Butler himself testified that he never complained of it to anyone. Mr. Butler offered no explanation as to how his disabled foot might have caused his absences, tardiness, insubordination or belligerency.

Against the legitimate reasons for terminating plaintiff, there was a dearth of evidence offered to rebut the defendant's case. The Court must conclude that Mr. Butler was properly discharged.

## VIOLATION OF PROCEDURE FOR TERMINATING AN EMPLOYEE

■ Count III of plaintiff's amended complaint alleges violation of due process. As a probationary employee, plaintiff was not due the full procedure a permanent employee receives under 5 U.S.C. § 7501 *et seq.* Indeed, a probationary employee may be summarily discharged. *Jordan v. Bolger*, 522 F.Supp. 1197, 1202 (D.Miss.1981); *aff'd.*, 685 F.2d 1384 (1982), *cert. denied*, 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994 (1983). A probationary employee is due only a letter in advance of discharge consisting of "conclusions as to the inadequacies of his performance or conduct." No specific instances of inadequacy need be

cited. *Id.* The agency or department may avail the discharged employee of further procedures. The evidence shows plaintiff was afforded all due discharge procedures. (See Joint Exhibit No. 1, Tab 47). Although plaintiff did not technically receive his letter before he was terminated, the letter was prepared and awaiting plaintiff's receipt should he arrive at work in advance of termination. (See Joint Exhibit No. 1, Tab 47; Plaintiff's Exhibit No. 18.) The plaintiff failed to arrive at work the next few days. Finally, as Commander Jones testified and the letter shows, the letter was read to the plaintiff over the phone. The letter was then mailed to plaintiff. Plaintiff received sufficient notice of his discharge.

## VIOLATION OF THE DUTY TO REASONABLY ACCOMMODATE THE HANDICAPPED

■ Plaintiff also alleges that under the Rehabilitation Act the defendant was required to "make reasonable accommodation to the known physical or mental limitations of a qualified handicapped employee unless the agency can demonstrate that the accommodation would impose an undue hardship on the operation of its program.... Reasonable accommodation may include ... job restructuring, part-time or modified work schedules." 29 C.F.R. § 1613.704. Unless the government can show accommodation is not reasonably possible, the burden is on the government to suggest *reasonable* accommodation to the *known* handicapped employee and not *vice versa*. *Crane v. Lewis*, 551 F.Supp. 27 (D.C.D.C. 1982) (emphasis added). Defendant disputes, however, that plaintiff was either handicapped or that his handicap was known. Even if the Court finds, *arguendo*, that plaintiff is handicapped, and defendant is chargeable with that knowledge, the defendant is still not necessarily liable to the plaintiff for his loss of employment. Nor does the Court necessarily have to find whether defendant "reasonably accommodated" plaintiff pursuant to the regulations.

■ The Rehabilitation Act and the regulations promulgated to implement it were designed to not only thwart discrimination in the hiring and firing of handicapped individuals, but to affirmatively assist in their career placement and advancement and ameliorate their work conditions through "reasonable accommodation." Where an employer fails to reasonably accommodate an eligible individual, that individual may have an action against the employer. That action, however, does not always lie merely because the regulations are not followed. An employee is not excused from misconduct or unsatisfactory performance that does not relate to his handicap even where the employer may have failed to reasonably accommodate that handicap. There must be some sufficient connection between the loss of the constitutionally or statutorily protected interest—employee's job—and the violation of the duty due employee. The Court cannot find any connection in this case.

■ The Court relies on the same evidence and testimony previously discussed in the discharge section of this opinion. Plaintiff does not show how any of the reasons for his dismissal were caused by a failure to reasonably accommodate his handicap. The Court has held previously that plaintiff was not dismissed because of his handicap. His absenteeism and tardiness were extraordinary. (*See, supra,* p. 1066). They were not caused by his handicap. He was repeatedly belligerent to others. (See, *supra,* p. 1066). This was not caused by any recognized handicap. He often did not follow orders, and he at times performed incompetently. The insubordination and incompetency did not result from his handicap. The testimony shows that almost no one knew of plaintiff's handicap. He failed to inform anyone about it. Nor was it readily apparent to anyone. One must infer that the plaintiff's handicap had little, if anything, to do with his poor job performance. The Rehabilitation Act was not designed to protect those who refuse to cooperate with their employers or give more than minimum effort to their

jobs. The evidence is overwhelming that the plaintiff was dismissed for legitimate reasons having nothing to do with the alleged failure of the defendant to provide "reasonable accommodation."

■ The Court also holds that the applicable regulations were not violated by the defendant. The regulations apply only to a "known" handicap, and require only "reasonable" accommodation. 29 C.F.R. § 1604.704. Even if the mere presence of a disability certification in an employee's record charges employers with knowledge of his handicap, where a handicap is neither apparent or complained of, the failure to *affirmatively* accommodate may not be unreasonable.

■ Nor does the case law say otherwise. Although there is no case exactly on point, in the cases construing the duty of "reasonable accommodation," the handicapped person came forward with specific evidence of his handicap and its effect on job performance. This initiated the government's duty to reasonably accommodate the handicapped person. Although the government certainly has a duty to propose or make reasonable accommodations, it cannot be an absolute duty triggered by the mere existence of a handicapped employee. I cannot hold the government's actions violative of "reasonable accommodation" where there is nothing to indicate the handicap was relevant to plaintiff's actual job performance, and, thus, nothing to indicate plaintiff was not, indeed, "reasonably accommodated." If employees are not required to be affirmatively candid about the relevant job-related specifics of their handicap, employers may be unfairly burdened with individuals with "hidden" physical or mental disabilities who then invoke protection of the Rehabilitation Act to avoid termination.

As stated above, the plaintiff's handicap was not obvious. It did not become apparent to anyone as affecting plaintiff's job performance. Plaintiff did not complain to anyone about the handicap, nor were the reasons for terminating the plaintiff related to his handicap. The Court must conclude that the defendant acted properly in all respects in discharging plaintiff.

A separate Order will be issued confirming the ruling made herein.

### ORDER

In accordance with the foregoing Memorandum and for the reasons stated therein, and in accordance with the testimony presented in open court on October 16, 1984 before the undersigned, IT IS, this 19th day of October, 1984, by the United States District Court for the District of Maryland, ORDERED:

1. That judgment BE, and the same hereby IS, ENTERED in favor of the defendant;

2. That the Clerk of Court enter this case as CLOSED on this Court's docket; and

3. That the Clerk of Court mail copies of this Order and the foregoing Memorandum to counsel for the parties in this case.