UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT


No. 95-2209

RICHARD JACQUES,

Plaintiff - Appellant,

v.

CLEAN-UP GROUP, INC.,

Defendant - Appellee.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Eugene W. Beaulieu, U.S. Magistrate Judge] 



Before

Torruella, Chief Judge, 

Cyr and Boudin, Circuit Judges. 



Eric M. Mehnert, with whom Hawkes & Mehnert was on brief for 
appellant.
John S. Bobrowiecki, Jr., with whom Farris, Susi, Heselton & 
Ladd, P.A. was on brief for appellee. 



September 19, 1996


TORRUELLA, Chief Judge. Appellant Richard Jacques TORRUELLA, Chief Judge. 

("Jacques"), a person with epilepsy, brought suit against

Appellee Clean-Up Group, Inc. ("the Group") seeking damages under

the Americans with Disabilities Act ("the ADA" or "the Act"), 42

U.S.C. 12101 et seq. The jury returned a verdict in favor the 

Group and, subsequently, the district court denied Jacques'

motion for judgment as a matter of law pursuant to Federal Rules

of Civil Procedure 50 and upheld the jury verdict. Before us is

Jacques' appeal of the decision and judgment below. Jacques also

appeals from an evidentiary ruling. We affirm.

I. BACKGROUND I. BACKGROUND

Jacques argues that there is insufficient evidence to

support the jury verdict and that the district court therefore

should have granted his motion for judgment as a matter of law

pursuant to Fed. R. Civ. P. 50(a) & (b). We review the court's

denial of the Rule 50 motion de novo, examining the evidence in 

the light most favorable to the nonmovant, the Group. Golden 

Rule Ins. Co. v. Atallah, 45 F.3d 512, 516 (1st Cir. 1995). "[W]e 

may not consider the credibility of witnesses, resolve conflicts

in testimony, or evaluate the weight of the evidence." Wagenmann 

v. Adams, 829 F.2d 196, 200 (1st Cir. 1987). Reversal of the 

denial of the motion is warranted "only if the facts and

inferences 'point so strongly and overwhelmingly in favor of the

movant' that a reasonable jury could not have reached a verdict

against that party." Atallah, 45 F.3d at 516 (quoting 

Acevedo-D az v. Aponte, 1 F.3d 62, 66 (1st Cir. 1993)). Thus, we 

-2-

present the facts in the light most favorable to the Group as the

jury could have found them.

Clean-Up Group, Inc., a Maine corporation, is a small

cleaning company, located approximately two-and-a-half miles from

Jacques' residence. Jacques was employed by the Group as an all-

purpose cleaning person between November 6, 1993, and February

1994. Because of his epilepsy, Jacques is not permitted to

operate a motor vehicle in Maine. Throughout his employment, the

Group had regularly assigned Jacques to more than forty hours per

week at various job sites and considered him to be a

conscientious and good worker. Jacques reported to his various

assignments by walking, riding his bicycle, or riding in one of

the Group's vans, which were routinely used when employees,

working as a crew, and equipment had to be transported to a job

site. Employees riding in vans were driven to and from the

Group's office. The Group had never provided transportation to

its employees under other circumstances. On February 19, 1994,

Jacques was laid off from the Group when the crew to which

Jacques was assigned was dissolved. A few days later, on

February 24, the Group offered Jacques a full-time assignment

cleaning the Kennebec Ice Arena (the "Arena"), which was about

three miles from Jacques' home. Of those laid off, Jacques was

the only one of his crew to be offered another assignment.

Although he had never requested a ride to an assignment in the

past, because he could not drive and the Arena was approximately

three miles from his home, Jacques asked the Group's manager,

-3-

Chris Buck ("Buck"), whether he would be catching a ride from the

Group's headquarters or whether a company van would pick him up

on its way to the job site. Buck replied that Jacques would have

to arrange for his own transportation to the Arena. Jacques'

response was that he would inquire into bus routes and schedules

and would telephone Buck right back. Upon gathering the relevant

information, Jacques telephoned Buck and informed him that he

could take a bus and arrive at the Arena sometime between 10:00

a.m. and 10:30 a.m. In reply, Buck informed him that starting at

that time was unacceptable. The Arena assignment required a

start time of 8:00 a.m. as certain public areas had to be

completed prior to, at least, 9:30 a.m. Buck told Jacques that

he would find someone else for the Arena assignment. Another

employee, who the evidence shows did not have a disability, was

subsequently assigned to that assignment. 

Jacques was not dismissed from the Group for his

failure to perform the Arena assignment and continued to be

assigned to work seven hours a week on Sundays at the Carlton

Woolen Mills (the "Mills"), an assignment which generally was

considered one of the dirtiest. Jacques had previously worked at

the Mills. The record suggests that it was often an assignment

Group employees did in order to earn overtime. The Group

provided Jacques with transportation to the Mills in one of the

company vans in which two other employees also traveled. Jacques

reported to the Mills assignment from February 27, 1994, through

March 27, 1994, at which point Jacques discontinued reporting to

-4-

that assignment. Jacques has not worked for the Group since

then. Shortly after February 25, 1994, Jacques began soliciting

direct employment from some of the Group's customers. In

connection with his job search, Jacques sent a letter dated March

3, 1994, to one of the Group's customers, in which he made

disparaging statements about the Group (the "March 3 letter"). 

Jacques subsequently brought this civil action under

the ADA, alleging that the Group discriminated against him in

regard to his right of return from layoff, rehire and job

assignment by failing to find a "reasonable accommodation" for

his disability.1 After the court denied Jacques' motion for

partial summary judgment,2 the issues of intentional

discrimination and punitive damages were tried to a jury on July

11, 1995. At the close of the Group's evidence, Jacques moved

for judgment as a matter of law pursuant to Fed. R. Civ. P. 50,

which motion was denied. On July 17, 1995, the jury returned a

verdict finding that the Group did not illegally discriminate

against Jacques on the basis of his disability and, consequently,

did not reach the issues of compensatory and punitive damages.
 

1 Jacques does not allege that he was discriminated against in
termination or layoff. Indeed, not only is it uncontroverted
that the Group did not terminate Jacques for his failure to
fulfill the Arena assignment and that Jacques continued to be
assigned to the weekly Mills assignment, but the evidence clearly
shows that Jacques stopped reporting to the Mills assignment and
the Group on his own volition.

2 The district court denied summary judgment on the grounds that
there was "a material dispute about whether [Jacques']
employment, and there [was] insufficient evidence that [Jacques]
suffered some other adverse employment action." Memorandum of
Decision, May 23, 1995 (Docket No. 23).

-5-

Appellant moved again for judgment as a matter of law pursuant to

Fed. R. Civ. P. 50. After reviewing briefs from both parties,

the district court issued its memorandum and decision on October

2, 1995, in which it denied Jacques' motion and entered judgment

in accordance with the jury verdict. 

II. APPLICABLE LAW II. APPLICABLE LAW

The ADA is a federal civil rights statute, enacted "to

provide a clear and comprehensive national mandate for the

elimination of discrimination against individuals with

disabilities." 42 U.S.C. 12101(b)(1). "In the employment

context, the ADA prohibits a 'covered entity' (defined as 'a

person engaged in an industry affecting commerce who has 15 or

more employees') from 'discriminat[ing] against a qualified

individual with a disability because of the disability of such

individual in regard to job application procedures, the hiring,

advancement, or discharge of employees, employee compensation,

job training, and other terms, conditions, and privileges of

employment.'" Katz v. City Metal Co, Inc., 87 F.3d 26, 30 (1st 

Cir. 1996) (quoting 42 U.S.C. 12112(a)); see Grenier v. 

Cyanamid Plastics, Inc., 70 F.3d 667, 671 (1st Cir. 1995). The 

regulations3 adopted under the ADA provide that it is unlawful

for a covered entity to discriminate on the basis of

 

3 "Such administrative interpretations of the Act by the
enforcing agency, 'while not controlling upon the courts by
reason of their authority, do constitute a body of experience
and informed judgment to which courts and litigants may properly
resort for guidance.'" Grenier, 70 F.3d at 672 (quoting Meritor 
Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986)). 

-6-

"disability," see 42 U.S.C. 12102(2) (defining term), against a 

"qualified individual with a disability," see 42 U.S.C.  

12111(8) (defining term), in regard to, inter alia, the right of 

return from layoff, 29 C.F.R. Ch. XIV 1630.4(b), and job

assignments, 29 C.F.R. Ch. XIV 1630.4(d).

The ADA further provides that the term "discriminate"

includes:

not making reasonable accommodations to
the known physical or mental limitations
of an otherwise qualified individual with
a disability who is an applicant or
employee, unless such covered entity can
demonstrate that the accommodation would
impose an undue hardship on the operation
of the business of such covered entity
. . . .

42 U.S.C. 12112(5)(A). Reasonable accommodations include,

inter alia, "job restructuring [and] part-time or modified work 

schedules." 42 U.S.C. 12111(9); see 29 C.F.R. App. 1630.2(o) 

(defining reasonable accommodation). Furthermore, in order 

[t]o determine the appropriate reasonable
accommodation, it may be necessary for
the covered entity to initiate an
informal, interactive process with the
qualified individuals with a disability
in need of the accommodation.

29 C.F.R. 1630.2(o)(3).

To establish a claim of disability discrimination under

the ADA, a plaintiff must prove three things by a preponderance

of the evidence:

First, that he [or she] was disabled
within the meaning of the Act. Second,
that with or without reasonable
accommodation he [or she] was able to
perform the essential functions of [the]

-7-

job. And, third, that the employer
discharged him [or her] in whole or in
part because of his [or her] disability.

Katz, 87 F.3d at 30. A plaintiff may also indirectly prove his 

or her case "by using the prima facie case and burden shifting 

methods that originated in McDonnell Douglas Corp. v. Green, 411 

U.S. 792 (1973)." Id. n.2 (citations omitted); see Taylor v. 

Principal Financial Group, Inc., F.3d , , 1996 WL 

350705 at *6 (5th Cir. 1996) (citations omitted). Under the

McDonnell Douglas analysis, a plaintiff must first prove by a 

preponderance of the evidence that he or she (i) has a disability

within the meaning of the Act; (ii) is qualified to perform the

essential functions of the job, with or without reasonable

accommodations; (iii) was subject to an adverse employment action

by a company subject to the Act; (iv) was replaced by a non-

disabled person or was treated less favorably than non-disabled

employees; and (v) suffered damages as a result. See Taylor,  

F.3d at , 1996 WL 350705 at *6. 

III. PROCEEDINGS BELOW III. PROCEEDINGS BELOW

Below, the Group stipulated to the following: (i) at

the time of Jacques' separation from the Group, it was subject to

the ADA; (ii) Jacques is "disabled" within the meaning of the

ADA; and (iii) the Group was aware of Jacques' disability and

inability to drive a car at the time of the alleged

discrimination. As the district court correctly found, Jacques

was clearly qualified, indeed over-qualified given his education,

for the position of a general purpose cleaner. However, the

-8-

Group argued that Jacques was not "otherwise qualified" because

he could not fulfill, with or without reasonable accommodation,

the "essential function"4 of arriving at the Arena by 8:00 a.m.

and that his suggested accommodations -- transportation and a

later starting time -- would pose an undue burden on the Group.

The jury, thus, was charged with determining whether Jacques was

otherwise qualified to perform the essential function of the job,

with or without reasonable accommodation; whether the Group

illegally discriminated against him on the basis of his

disability; and, if so, if he suffered damages as a result.

Because the jury resolved the merits against Jacques, the

question of damages was never addressed. 

Based on the evidence, the district court concluded

that a reasonable jury could find: (i) that the completion time

of the Arena assignment was an essential element of the position,

see 29 C.F.R. App. 1630.2(n); (ii) that there was no reasonable 

accommodation to Jacques' disability that would not pose an undue

hardship to the Group,5 see 42 U.S.C. 1211(10); and (iii) that 

for these reasons, the jury could reasonably find that Jacques

 

4 The EEOC regulations define the term "essential functions" as
"the fundamental job duties of the employment position the
individual with a disability holds" and "does not include the
marginal functions of the position." 29 C.F.R. 1630.2(n)(1).
Among other reasons, a job function may be considered essential
because the position exists to perform that particular function.
See 29 C.F.R. 1630.2(n)(2); Larkins v. Ciba Vision Corp., 858 
F. Supp. 1572, 1580 (N.D.Ga. 1994).

5 According to the Group, the Mills assignment was not intended
to be a reasonable accommodation for Jacques. 

-9-

was not otherwise qualified to perform the essential function of

the Arena assignment, with or without reasonable accommodation.

-10-

IV. DISCUSSION IV. DISCUSSION

Turning to the appeal before us, we note first that

Jacques conceded during oral argument that an essential function

of the Arena assignment was the 8:00 a.m. start time.

Consequently, in light of the Group's stipulations below and

Jacques' concession, resolution of this appeal hinges only on

whether the jury properly found that Jacques was not "otherwise

qualified, with or without reasonable accommodation" to perform

the Arena assignment's essential function of arriving by 8:00

a.m. 

After reviewing de novo the evidence in the light most 

favorable to the Group as the nonmovant, Atallah, 45 F.3d at 516, 

we agree with the district court that a reasonable jury could

reach the conclusions it set forth in its decision. Indeed, the

jury reasonably could have found that Jacques' disability was not

a motivating factor in the Group's decision to find a replacement

for the Arena assignment. Not only was Jacques the only person

from the laid-off crew to have been offered the opportunity to

return from layoff, but at the time Jacques was offered the Arena

assignment the Group (including Buck) had full knowledge of

Jacques' disability and his inability to drive; indeed, the

record shows that, with respect to the Arena assignment, Jacques

was both "hired" and "fired" by the same person, Buck. See 

Tyndall, 31 F.3d at 214 (noting that there is a strong inference 

of nondiscrimination where the hirer and firer are the same

person).

-11-

Furthermore, the record strongly suggests that Jacques

could have fulfilled the essential function of arriving at the

Arena by 8:00 a.m. without the need for a reasonable 

accommodation. Jacques testified that he was quite willing to

make his own way to the Group's office some two and half miles

from his home, however, he never explained why he was unwilling

to go the approximate extra half a mile to the Arena. The jury

reasonably could have been swayed by this unexplained refusal

given the uncontroverted evidence that Jacques had never

previously requested transportation and had always made his way

to the Group's office. 

Or, in the alternative, the jury reasonably could

have found that providing Jacques with transportation constituted

an undue burden for the Group as there was testimony to the

effect that: (i) all of the Group's vans were assigned to other

crews and were unavailable to transport Jacques; (ii) no other

Group employee was available to provide Jacques with

transportation on a daily basis; and (iii) it would be

economically detrimental for the Group to hire another individual

to drive Jacques in light of its profit margin. Further still,

the jury reasonably could have found that accommodating Jacques

by permitting him to start after 10:00 a.m., by splitting his

shift with another employee, or by reassignment to another crew

would be unreasonable as it would eliminate the job's essential

function of arriving at 8:00 a.m. See, e.g., Treadwell v. 

Alexander, 707 F.2d 473, 478 (11th Cir. 1983) (affirming district 

-12-

court conclusion that, in light of agency's limited resources,

"doubling up" employees would impose an "undue hardship");

Larkins v. CIBA Vision Corp., 858 F. Supp. 1572, 1583 (N.D.Ga. 

1994) (holding that the ADA does not require an employer to

eliminate the essential functions of a job to accommodate an

employee).

This does not end our inquiry, however, as Jacques

faults the district court's denial of his Fed. R. Civ. P. 50

motion. He argues here, as he did below, that the Group

discriminated against him as a matter of law through its

uncontroverted failure to engage in an "informal, interactive

process" with him, within the meaning of 29 C.F.R. 

1630.2(o)(3), in order to determine whether a reasonable

accommodation could have been made so that Jacques could get to

the Arena by 8:00 a.m.6 The reasonableness of Jacques' suggested

accommodations and the question of any undue burden for the

Group, Jacques contends, are not even reached in this case. As

Jacques admitted in oral argument, the fundamental basis of his

claim is that the Group's failure to look for, or suggest,

alternative accommodations constitutes a violation even where, as

here, there is no proof that any informal interactive process

would have actually borne any fruit. 

 

6 For record support, Jacques points to his trial testimony as
well as that of Buck and the Group's President, all of which
demonstrate that the Group made absolutely no effort to find a
reasonable accommodation or otherwise assist Jacques in
determining whether one existed. 

-13-

For legal support, Jacques relies on 29 C.F.R.

1630.2(o)(3). In response to the Group's observation that

Jacques' brief provides no case law to support his argument,

during oral argument Jacques pointed us to three cases

interpreting analogous provisions in the Rehabilitation Act of

1973, 29 U.S.C. 791 et seq.,7 and California's Fair Employment 

and Housing Act ("FEHA"). These cases, he contends, support his

assertion that it is an employer's duty to suggest and provide

reasonable accommodations to the employee. See Buckingham v. 

United States, 998 F.2d 735, 739-41 (9th Cir. 1993) (upholding 

denial of summary judgment for employer on the grounds that there

is no per se rule against employee transfers under the 

Rehabilitation Act and that employers have duty to "gather

sufficient information" when accommodation is required to enable

employee to perform essential function); Sargent v. Litton 

Systems, Inc., 841 F. Supp. 956 (N.D.Ca. 1994) (denying summary 

judgment under FEHA where genuine issue of material fact existed

regarding employer's efforts to accommodate and existence of

undue hardship); Butler v. Dept. of the Navy, 595 F. Supp. 1063, 

1068 (D.Md. 1984) (noting that government's duty to propose or

make reasonable accommodations cannot be triggered by mere

existence of handicapped employee where there is no evidence that

employee was not reasonably accommodated and finding that

 

7 "Unless expressly stated otherwise, the standards applied in
the ADA are not intended to be lesser than the standards applied
under the Rehabilitation Act of 1973." 29 C.F.R. 1630.1, App.
(1995). 

-14-

employee failed to show how reasons for dismissal were caused by

failure to reasonably accommodate). 

For record support, Jacques points to trial testimony

elicited by the Group's after-the-fact investigation into three

area organizations that provide transportation to disabled

individuals. This testimony, Jacques argues, not only

demonstrates his complete unawareness until asked on cross-

examination that those services existed but also that the Group

was better situated to ascertain alternative reasonable

accommodations. Their failure to do so, he points out, is not

surprising given the undisputed testimony that the Group, while

aware that it was subject to the ADA, was unaware of ADA

provisions regarding reasonable accommodations.

The Group counters with two points. First, the Group

argues that 29 C.F.R. 1630.2(o)(3) does not impose an

affirmative obligation upon the employer as it explicitly uses

the term "may," not "shall." Second, the Group points out that

the jury was instructed in accordance with Section 1630.2(o)(3)'s

language and that the jury could have found from the evidence

presented that the Group's failure to suggest additional options

did not constitute a failure to provide reasonable

accommodations. Conceding at oral argument that the employer may

in some situations have specialized knowledge or be otherwise

better situated such that it would be required to suggest

accommodations in the first instance, the Group argues that the

jury could reasonably conclude that this was not such a case. 

-15-

The regulations' use of "may" clearly suggests that

Congress, while it could have imposed an affirmative obligation

upon employers in all cases, chose not to. That said, however,

as the Seventh Circuit recently observed, "someone, either the

employer or the employee, bears the ultimate responsibility for

determining what specific actions must be taken by the employer,"

Beck v. University of Wis., 75 F.3d 1130, 1135 (7th Cir. 1996), 

and 29 C.F.R. 1630.2(o)(3) indicates that "[t]he employer has

at least some responsibility in determining the necessary

accommodation . . . [and that] the regulations envision an

interactive process that requires participation by both parties."

Id. The Fifth Circuit made a similar observation even more 

recently: "Once the accommodation is properly requested, the

responsibility for fashioning a reasonable accommodation is

shared between the employee and the employer." Taylor, F.3d 

at , 1996 WL 350705 at *8 (stating that the "employee's

initial request triggers employer's obligation to participate in

interactive process" and that employer cannot be held liable for

failing to provide one if employee fails to request an

accommodation.); cf. White v. York Int'l Corp., 45 F.3d 357, 363 

(10th Cir. 1995) (noting that interactive process is triggered

only after employer makes threshold determination that disabled

employee may be accommodated).8

 

8 Neither party cited any of these ADA cases. Even though
Taylor was decided after oral argument, neither party filed a 
supplemental letter pursuant to Fed. R. App. P. 28(j).

-16-

That said, based upon our standard of review, this

appeal begins and ends with the reasonableness of the jury's

verdict: we simply cannot conclude that reasonable persons,

looking at the evidence in the light most favorable to the Group,

and according it all reasonable inferences could not have found

for the Group. See Gallagher v. Wilton Enterprises, Inc., 962 

F.2d 120, 124 (1st Cir. 1992); Chedd, Angier v. Omni 

Publications, Inc., 756 F.2d 930, 934 (1st Cir. 1985). In other 

words, we agree with the Group that the jury could have found

from the evidence presented that the Group's failure to suggest

additional options did not constitute a failure to provide

reasonable accommodations. 

The jury was correctly instructed that 

it may be necessary for the employer to
initiate a discussion with the employee
about appropriate accommodations . . . .
Unlawful discrimination occurs when the
employee's . . . opportunities with
respect to . . . right of return from
layoff, rehiring and job assignment are
adversely affected because of his
disability or because the employer failed
to make a reasonable accommodation.

Tr. Trans. Vol. IV at 388-89. Jacques objected to the court's

refusal to instruct the jury that if it were to find that the

Group failed to give him a reasonable accommodation then it would

not need to go any further as this failure itself constituted

intentional discrimination but did not object on the grounds that

the instruction misstated the law. Nor does he make such a claim

or otherwise challenge the district court's instruction on

appeal. 

-17-

Given its instructions and the evidence presented, the

jury could have reasonably concluded that the Group's failure to 

initiate an interactive process or suggest alternatives did not

constitute a per se failure to provide reasonable accommodations 

here. The jury reasonably could have concluded that engaging in

an interactive process simply was not necessary in order to 

determine the appropriate reasonable accommodation. Not only was

there substantial evidence from which to conclude that Jacques

(an intelligent and well-educated individual who had always

managed to make his own way to job sites in the past) was just as

well situated, if not better so, to investigate and suggest other

alternatives, but the jury reasonably could have concluded that

Jacques was simply unwilling to fulfill the essential function of

the Arena assignment: as we already noted, Jacques never

explained why the extra half mile precluded him from getting to

the Arena assignment on his own or why he was otherwise unwilling

to travel that extra distance. Cf. Taylor, F.3d at , 1996 

WL 350705 at *8 (noting that employee failed to fulfill burden of

adducing summary judgment evidence showing that he told employer

that he was limited as a result of his disability); Buckingham, 

998 F.2d at 742 (noting on remand that employee may meet burden

by showing, inter alia, that accommodation sought is necessary to 

enable performance of essential function).9 
 

9 We recognize that, even when qualified employees are able to
perform a job's essential functions, employers may not be
relieved of their duty to accommodate where accommodations are
required to allow equal enjoyment of employment privileges and
benefits or to pursue therapy or treatment. See Buckingham, 998 

-18-

Furthermore, apart from his investigation into bus

routes, Jacques presented no evidence that he requested any other

accommodations, inquired whether the Group had any suggestions,

or otherwise indicated that he was still interested in finding a

solution. Cf. Taylor, F.3d at , 1996 WL 350705 * 8 

(noting that responsibility for fashioning accommodation is

shared between employer and employee). While it is

uncontroverted that the Group did not suggest any alternative

accommodations after it rejected as unreasonable Jacques'

proposed accommodations, there is no evidence that the Group

failed to consider Jacques' requested accommodations and "there

is nothing in the record from which we can discern any attempt by

the [Group] to sweep the problem under the rug." Beck, 75 F.3d 

at 1136 (affirming summary judgment in favor of employer under

the ADA where employee was responsible for breakdown in

interactive process to determine reasonable accommodation); cf. 

Butler, 595 F. Supp. at 1967 (noting that there must be some 

sufficient connection between the loss of the protected interest,

the job, and the violation of the duty owed to the employee). 

Indeed, just as the jury reasonably could conclude that

Jacques did not need reasonable accommodation in order to perform

the essential functions, the Group quite reasonably could have

interpreted Jacques' unexplained refusal to travel the additional

 

F.2d at 740-41. This, however, does not assist Jacques as he
presented no evidence that he required accommodation in order to
enjoy equal privileges and benefits or to pursue therapy or
treatment for his epilepsy.

-19-

half-a-mile as an implicit refusal of the Arena assignment and

preference to wait for a more convenient assignment to become

available. As Macomber testified, Jacques "rode his bike to

[the] office every single day, and the ice [A]rena was not much

further. That's the reason [why] I offered him the job." In

fact, trial testimony that the Group filed in opposition to

Jacques' application to the Maine Department of Labor for partial

unemployment on the basis that he refused the Arena assignment

suggests that this is precisely how the Group interpreted the

situation.

Of course, we are painfully aware that the Group's

failure to engage in an informal interactive process with Jacques

regarding accommodation options beyond those which he requested

results from its failure to be properly informed of its

obligations under the ADA. Nevertheless, the Group is spared

from walking the plank given that we cannot conclude under our

circumscribed review of the jury's verdict -- evaluating the

evidence with our "eye[s] toward determining whether it can

support only one outcome," S nchez v. Puerto Rico Oil Co., 37 

F.3d 712, 716 (1st Cir. 1994) -- that no reasonable jury could

have reached the verdict reached below.

The ADA represents a major commitment by the federal

government to assure adequate protection to Americans with

disabilities. There may well be situations in which the

employer's failure to engage in an informal interactive process

would constitute a failure to provide reasonable accommodation

-20-

that amounts to a violation of the ADA. But cases involving

reasonable accommodation turns heavily upon their facts and an

appraisal of the reasonableness of the parties' behavior. The

jury verdict in this case was not irrational, the jury

instructions were not subject to objection, and we leave more

difficult cases to another day.

V. EVIDENTIARY RULING V. EVIDENTIARY RULING

Jacques also argues that the district court abused its

discretion when it admitted into evidence the March 3 letter in

which Jacques made disparaging statements about the Group. If

this were a case about discrimination occurring upon termination,

Jacques maintains, the letter's admission would be justified;

however, because the discrimination occurred upon Jacques' return

from layoff -- one week before the aggressive and inflamatory

letter was written -- the probative value of the letter is highly

questionable. Because of this, Jacques continues, and because

the letter served merely to reflect upon his character and to

arouse the jury's hostility, it should have been excluded due to

its "extreme prejudicial nature." 

As Jacques points out, "[e]vidence having a dual

tendency, inadmissible and gravely prejudicial for one purpose

but not objectionable for another if separately considered,

should be excluded from the jury where the feat of ignoring it in

the one aspect while considering it in the other is too subtle

for the ordinary mind and the risk of confusion is so great as to

upset the balance of practical advantage." Shepard v. United 

-21-

States, 290 U.S. 96, 103 (1933). Be that as it may, Jacques' 

counsel failed not only to object on any grounds other than

relevance but also to request a limiting instruction. As counsel

never moved beyond relevancy to argue unfair prejudice under Fed.

R. Evid. 403, we review Jacques' claim of error under Rule 403

only for plain error pursuant to Fed. R. Civ. P. 103,10

recognizing while we do so that "Rule 403 is a liberal rule under

which relevant evidence generally is admitted." United States v. 

McMahon, 938 F.2d 1501, 1508 (1st Cir. 1991); Dente v. Riddell, 

Inc., 664 F.2d 1, 5 (1st Cir. 1981) ("A trial judge has much 

latitude in these matters.").

It was clearly not plainly erroneous to admit the

letter on the basis that its probative value outweighed its

prejudicial effect. While the letter does not frame Jacques in a

flattering light, it was certainly not without relevance. In

response to Jacques' relevancy objection, the Group replied below

that the March 3 letter was relevant as it tended to show that

the Group did not intentionally discriminate against Jacques in

making its decision to terminate and failure to rehire. The

court agreed, noting that "if the jury finds it was the

disability which was the cause of termination first, they have to

find that and that's discriminatory. . . . If there were other
 

10 Fed. R. Civ. P. 103 provides, in pertinent part: "Error may
not be predicated upon a ruling which admits or excludes evidence
unless a substantial right of the party is affected . . . . In
case the ruling is one admitting evidence, a timely objection or
motion to strike appears on the record, stating the specific
ground of objection, if the specific ground for the objection is
not apparent from the context."

-22-

reasons, it's a factual finding for the jury."11 Even though the

letter was written after the alleged discrimination regarding

Jacques' return from layoff, it was still relevant as it also

tended to show that Jacques was an intelligent, educated and

resourceful individual. It also was probative as to his

credibility. Even were we to assume that the magistrate judge

was faced with a "close call" given the letter's prejudicial

propensity, see Fed. R. Civ. P. 403, we nonetheless would find no 

plain error. Not only do we find that the probative value of the

letter is not "substantially outweighed" by any unfair prejudice,

but we would strike the Rule 403 balance in favor of admission. 

McMahon, 938 F.2d at 1508.  

VI. CONCLUSION VI. CONCLUSION

For the foregoing reasons, the decision below is

affirmed. affirmed 

 

11 Relying on McShain, Inc. v. Cessna Aircraft Co., 563 F.2d 
632, 635 (3d Cir. 1977), Jacques also faults the district court's
articulation of factors used in balancing the probative value and
prejudicial effect of the evidence. Id. ("The substantiality of 
the consideration given to competing interests (potential
prejudice and probative value) can best be guaranteed by an
explicit articulation of the trial court's reasoning."). Because
Jacques failed to raise the issue of prejudicial effect below, we
also review this for plain error. We find none. 

-23-